294 S.E.2d 179

**STATE of West Virginia**

v.

**Larry DAVIS.**

**No. 15402.**

Supreme Court of Appeals of West Virginia.

July 8, 1982.

Brown H. Payne, Beckley, for appellant.

Chauncey H. Browning, Atty. Gen., and S. Clark Woodroe, Asst. Atty. Gen., Charleston, for appellee.

MILLER, Chief Justice:

In this criminal appeal the defendant, Larry Davis, challenges his convictions of five counts of breaking and entering primarily on the basis of illegally seized evidence including the use of his allegedly invalid oral confession.

During the night of April 19, 1980, five business establishments located on the second floor of a building in Beckley were broken into and items of personal property were taken. Entry had been gained to the building through the second floor of the adjacent Beckley Hotel. A Beckley police officer, with the permission of the hotel clerk, searched the hotel for the room which was adjacent to the burglarized building. Upon opening the door of Room 214 he saw an allegedly stolen radio. After placing a patrolman at the door, he obtained a warrant and searched the room. The search revealed stolen radios. The room was registered in the name of Frederick R. Loock who was subsequently arrested.

Loock admitted to the crimes and implicated the defendant. A police officer was dispatched to the defendant's home to arrest him. The officer did not have an arrest warrant. The defendant opened the door of his residence in response to the officer's knock and the officer stepped inside. While inside the officer saw a television set on a dresser in the bedroom which matched the description of one which was stolen. The officer arrested the defendant, advised him of his constitutional rights and took the television set and an allegedly stolen recorder lying beside it.

At the police station, after he had been given his *Miranda* warnings, the defendant gave an oral statement admitting that he assisted Loock but claimed that he stayed in the hotel room while Loock handed the stolen merchandise to him through the window. The defendant claimed that the television set and tape recorder found in his home had been given to him for helping Loock.

A short time after his oral confession, the defendant was then taken before a magistrate but was apparently so intoxicat-

ed that the magistrate requested that he be brought back later. The following day he was again brought before the magistrate and served with warrants for his arrest.[1]

At trial, the defendant moved to suppress the introduction of the television set and tape recorder found in his house as being illegally seized without a warrant and not incident to a valid arrest. Additionally, he claimed that his oral statement was also inadmissible because it was made after he had been illegally arrested in his home. At an *in camera* hearing, the court ruled that the State would not be permitted to introduce the television set or tape recorder but that the police officer could state that he observed these items in the defendant's home. The trial court also ruled that the police officer could testify concerning the defendant's oral inculpatory statements made at the police station.

■ The trial court's ruling that the television set and tape recorder seized from the defendant's home could not be introduced in evidence was proper. This ruling however would also preclude any testimony from the officer that he had seen these items in the defendant's home.[2] The general rule is that where there is an illegal seizure of property, such property cannot be introduced into evidence, and testimony may not be given in regard to the facts surrounding the seizure of the property. *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920); *McGinnis v. United States*, 227 F.2d 598 (1st Cir. 1955); *United States v. Fredericks*, 586 F.2d 470 (5th Cir. 1979), *cert. denied*, 440 U.S. 962, 99 S.Ct. 1507, 59 L.Ed.2d 776; *Duncan v. State*, 278 Ala. 145, 176 So.2d 840 (1965); *Alred v. Commonwealth*, 272 S.W.2d 44 (Ky.App.1954); *Rohfling v. State*, 230 Ind. 236, 102 N.E.2d 199 (1951); *Sanders v. State*, 287 P.2d 458 (Okl.Cr.1955). The reason for this rule is rather simple. If there has been an illegal seizure of property, the State could circumvent its illegality if it could offer in lieu of the illegally seized property, oral testimony of the officer describing the seized property, its location when seized, and the defendant's connection to it. To permit this type of testimony would emasculate the Fourth Amendment bar against illegal seizures.

■ The United States Supreme Court has held in *Payton v. New York*, 445 U.S. 573, 589–90, 100 S.Ct. 1371, 1382, 63 L.Ed.2d 639, 653 (1980), that a warrantless entry into a person's home either to effect his arrest or to seize his property therein contained violates the Fourth Amendment of the United States Constitution in the absence of probable cause and exigent circumstances:

"The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in clear and specific constitutional terms: 'The right of the people to be secure in their ... houses ... shall not be violated.' That language unequivocally establishes the proposition that '[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable Government intrusion.' *Silverman v. United States*, 365 U.S. 505, 511, 81 S.Ct. 679, [782] 5 L.Ed.2d 734, 97 A.L.R.2d 1277. In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." (Ellipsis in original)

**1.** Because we find the defendant's oral statements to be inadmissible as a result of an illegal arrest, we do not consider the question of the defendant's intoxication as bearing upon the voluntariness of his confession. *See State v. Persinger*, 169 W.Va. 121, 286 S.E.2d 261 (1982).

**2.** The record in this case is somewhat confusing on this point as the defense counsel's objection was not initially directed to this precise point and the police officer's testimony came at the end of his answer to a general question. The trial court *sua sponte* called an *in camera* hearing where the seizure issue was discussed, as well as the admissibility of the defendant's oral inculpatory statement.

■ We have recognized the principle that a warrantless arrest cannot be made of a person in his home unless in addition to probable cause there exists some exigent circumstance that precludes the obtaining of a warrant in *State v. Craft*, 165 W.Va. 741, 272 S.E.2d 46, 54 (1980):

"Where the warrantless arrest is made in the person's home a different rule applies. In this situation in order to make a valid warrantless arrest, in addition to a showing of probable cause that the person has committed a felony, there must be some special or exigent circumstances that precluded the obtaining of a warrant."

*See also State v. Canby*, 162 W.Va. 666, 252 S.E.2d 164 (1979); *State v. McNeal*, 162 W.Va. 550, 251 S.E.2d 484 (1978).

■ In the present case, the State's primary argument is that there were exigent circumstances that would justify the warrantless arrest. The only circumstance advanced is that the defendant might flee. We find no special or exigent circumstances to justify the warrantless arrest. The defendant was sought out in his home the day after the burglaries occurred. The *in camera* testimony revealed that the police knew that they would be taking the defendant into custody before they went to his residence. The officer indicated that he had gone to the defendant's home between 8:00 and 9:00 o'clock in the morning. From the evidence earlier obtained from Loock, they had probable cause for an arrest warrant. Moreover, Loock was already in jail and there is nothing to show that the defendant was even aware that he had been implicated in the crimes which would have caused him to flee. Consequently, the intrusion into the defendant's home without a warrant renders his arrest and the seizure of the television and tape recorder illegal.[3]

*Payton* demonstrates that the same requirement of probable cause and exigent circumstances must be met in order to make a warrantless search and seizure of a defendant's home and we have recognized this in Syllabus Point 1 of *State v. Smith*, 156 W.Va. 385, 193 S.E.2d 550 (1972):

"Except where authorized by law as incident to a lawful arrest, any search of a person or his dwelling on mere suspicion and the seizure of any article found as a result thereof, without an arrest warrant or a search warrant, is an unlawful search and seizure in violation of Section 6, Article 3 of the Constitution of West Virginia."

In *Smith*, we set this principle under Section 6 of Article III of the West Virginia Constitution but recognized in the opinion that it was mandated by the Fourth Amendment to the United States Constitution.

■ Because of the illegal arrest of the defendant, his oral statement made at the police station following his arrest was inadmissible. The law is clear that where an unlawful arrest is made and an inculpatory statement is subsequently given, such statement is not admissible even though the statement is made after *Miranda* warnings have been given to the suspect. In *Brown v. Illinois*, 422 U.S. 590, 601–03, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416, 426–27 (1975), the United States Supreme Court recognized an interrelationship between the Fifth Amendment right against self-incrimination and the Fourth Amendment right against illegal arrests stating:

"Thus, even if the statements in this case were found to be voluntary under the Fifth Amendment, the Fourth Amendment issue remains. In order for the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken, *Wong Sun* requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be 'sufficiently an act of free will to purge the primary taint.' 371 U.S. at 486, 83 S.Ct. 407 [at

---

**3.** The record is unclear as to how far the officer actually intruded into the defendant's home after the door was opened. No claim is made however that the arrest occurred immediately following the defendant's opening the door.

This type of warrantless arrest has been sanctioned by some courts. *E.g., United States v. Botero*, 589 F.2d 430 (9th Cir. 1978), *cert. denied*, 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1045; *Menendez v. State*, 368 So.2d 1278 (Fla.1979).

416], 9 L.Ed.2d 441, *Wong Sun* thus mandates consideration of a statement's admissibility in light of the distinct policies and interests of the Fourth Amendment.

"If *Miranda* warnings, by themselves, were held to attenuate the taint of an unconstitutional arrest, regardless of how wanton and purposeful the Fourth Amendment violation, the effect of the exclusionary rule would be substantially diluted. *See Davis v. Mississippi*, 394 U.S. 721, 726–727, 89 S.Ct. 1394, [1397] 22 L.Ed.2d 676 (1969). Arrests made without warrant or without probable cause, for questioning or 'investigation,' would be encouraged by the knowledge that evidence derived therefrom could well be made admissible at trial by the simple expedient of giving *Miranda* warnings. Any incentive to avoid Fourth Amendment violations would be eviscerated by making the warnings, in effect, a 'cure-all,' and the constitutional guarantee against unlawful searches and seizures could be said to be reduced to 'a form of words.' *See Mapp v. Ohio*, 367 U.S. [643] at 648, 81 S.Ct. 1684, [at 1687] 6 L.Ed.2d 1081, 84 A.L.R.2d 933."

We have followed this principle in Syllabus Point 3 of *State v. Canby, supra*:

"Exclusion of a confession obtained as a result of an illegal arrest without a warrant is mandated unless the causal connection between the arrest and the confession has been clearly broken."

*See also State v. Persinger*, 169 W.Va. 121, 286 S.E.2d 261 (1982); *State v. Moore*, 165 W.Va. 837, 272 S.E.2d 804 (1972).

In the present case, there is no showing of any event that would break the causal relation between the illegal arrest and the confession given an hour or so later at the station house.[4] In *State v. Canby, supra* at 167, we indicated that a "presentment before a neutral magistrate in compliance with W.Va.Code 62–1–5 (1965) might serve to break the causal chain." In *Brown v. Illinois, supra*, the Supreme Court after holding that *Miranda* warnings alone were not sufficient to break the causal connection between an illegal arrest and subsequent confession went on to list some of the considerations which interplay on the break of the causal connection:

"No single fact is dispositive. The workings of the human mind are too complex, and the possibilities of misconduct too diverse, to permit protection of the Fourth Amendment to turn on such a talismanic test. The *Miranda* warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered. The temporal proximity of the arrest and the confession, the presence of intervening circumstances, ... and, particularly, the purpose and flagrancy of the official misconduct are all relevant ... The voluntariness of the statement is a threshold requirement ... And the burden of showing admissibility rests, of course, on the prosecution." 422 U.S. at 603–04, 95 S.Ct. at 2261–62, 45 L.Ed.2d at 427. (Citations and footnotes omitted)

This same language was utilized in *Dunaway v. New York*, 442 U.S. 200, 60 L.Ed.2d 824, 99 S.Ct. 2248 (1979), which dealt with a confession following an illegal detention.

Because the trial court erred in permitting the introduction of the defendant's inculpatory statement and the testimony of the police officer locating the stolen television and tape recorder at the defendant's home, we must reverse the judgment and remand the case for a new trial.

Reversed and Remanded.

---

**4.** The defendant's unsigned statement bore a start time of 9:46 a. m. and a completion time of 10:00 a. m.