315 S.E.2d 392

**STATE of West Virginia**

v.

**Rex Allen FARMER.**

**No. 15843.**

Supreme Court of Appeals of
West Virginia.

Dec. 13, 1983.

Rehearing Denied April 11, 1984.

Fredrick S. Wilkerson, Asst. Atty. Gen., Charleston, for appellee.

J. Peter Richardson, Bluefield, for appellant.

NEELY, Justice:

The appellant, Rex Allen Farmer, pled guilty to forgery on 22 January 1982 and was placed on probation for two years. On 10 March 1982, he was arrested and charged with grand larceny for the theft of a number of items of personal property from a van.

On 17 March 1982, Robert L. Mazingo, chief probation officer of the Mercer County Circuit Court, filed a petition to revoke the appellant's probation. The circuit court conducted a probation revocation hearing and found that the appellant had violated the conditions of his probation and, therefore, revoked appellant's probation pursuant to *W. Va. Code* 62-12-9 [1983].[1] The appellant now appeals that revocation of probation on the grounds that the evidence

---

1. *W. Va. Code* 62-12-9 [1983] states in pertinent part:

Release on probation shall be upon the following conditions:

(1) That the probationer shall not, during the term of his probation, violate any criminal law of this or any other State, or of the United States.

used to sustain the revocation should have been excluded. We find that there was adequate admissible evidence to justify the circuit court in concluding that the appellant had violated a law of the State of West Virginia and, therefore, we affirm.

I

On 10 March 1982, the Mercer County Sheriff's Department received a complaint that some vehicles had been broken into at Chaser's Lounge near Princeton, West Virginia. A witness, Danny Russell Ballard, observed people running from a van parked in the lot adjacent to Chaser's Lounge toward a passenger car bearing West Virginia license number 3CL–625.

At approximately 7 a.m. the same morning, the reported license number was fed into the computer at the sheriff's department which indicated that the license belonged to a blue 1974 Chevrolet passenger car owned by Rex A. Farmer, General Delivery, Lashmeet, West Virginia. The vehicle's description matched the description given by Mr. Ballard in the complaint. The complaint further indicated that the following items had been stolen from the van: two Jenson speakers, one Trancredi booster, a Playmate cooler, a digital clock and an 8-track tape. The description of this merchandise was also provided in the complaint.

After this information was put together, Sergeant R.E. Baughman of the Mercer County Sheriff's Department, accompanied by another officer, went to Lashmeet. Shortly after arriving in Lashmeet the officers asked where they could find Mr. Farmer and learned that he was living with his ex-wife on Beeson Road near Lashmeet. When Sergeant Baughman and the other officer arrived at the address given to them, they observed a blue 1974 Chevrolet passenger car parked near the house with a license number matching the one that had been given by Mr. Ballard. The officers checked the locked vehicle from the outside and observed a Playmate cooler and an 8-track tape of the same type as the one reported stolen. A pair of speakers not matching the speakers referred to in the complaint were also inside the vehicle. Sergeant Baughman was aware that another vehicle had been broken into the same evening and that two other speakers had been stolen.

The officers went to a neighboring house to ask whether the appellant lived next door. The neighbor advised them that the appellant was living there with his ex-wife. The officers then went to the ex-wife's house and knocked on the door. Immediately after knocking, the officers saw the appellant jump out of bed and run through the house. The officers testified that they continued knocking on the door periodically for approximately thirty minutes. Finally, the appellant's ex-wife came to the door and denied the appellant was present inside. She was informed that the appellant had been observed inside the house and that the officers were going to arrest him. Sergeant Baughman entered the house and found the appellant hiding in a closet.

Sergeant Baughman placed the appellant under arrest and orally advised him of his rights. The appellant stated that he knew nothing about why he was being arrested and further stated that he had been drunk the previous night. The appellant was then told that a search warrant would be obtained to search his car. Once apprised of the officers' intentions to impound and search his vehicle, the appellant said that he would allow his ex-wife to open the trunk. The appellant then gave his ex-wife a key which she used to open the trunk of the vehicle. Inside the vehicle's trunk were two Jenson speakers which the owner, Mr. Kenny Cook, later identified as the speakers stolen from his van at Chaser's Lounge. The Playmate cooler and 8-track tape also belonged to Mr. Cook. Neither the Trancredi booster nor the digital clock was recovered.

After the stolen merchandise in the trunk had been recovered, the appellant's ex-wife unlocked the vehicle's passenger compartment and handed Sergeant Baughman the other merchandise which had previously been in plain view. These stolen items were taken back to the sheriff's department to be marked as evidence.

The appellant was taken to the Mercer county jail where he was again advised of his rights. He then executed a waiver of rights form, and gave a written statement. Later that morning at approximately 10 a.m., Sergeant Baughman took the appellant before the magistrate to obtain a warrant which charged the appellant with grand larceny. Appellant's statement was not introduced into evidence at the presentment.

## II

The appellant's primary assignment of error is that his arrest without a warrant was illegal and that the subsequent search of his vehicle, although pursuant to his consent, was also illegal as the fruit of an illegal arrest.

■■■ Our criteria for determining whether a lawful arrest can be made without a warrant in a person's own home were set forth in *State v. Canby*, 162 W.Va. 666, 252 S.E.2d 164 (1979). Although that case involved an arrest made at the defendant's home, we did not explicitly limit our holding to that factual context. Today we clarify that ruling by stating that the test laid out in *Canby*, which requires exigent circumstances in addition to probable cause, is limited to arrests without warrants that are made in the home. *See, State v. Craft*, 165 W.Va. 741, 272 S.E.2d 46, 55 (1980). In *Canby* we said:

> In order for police officers to make an arrest without a warrant, they must have had at the time of the arrest sufficient reliable evidence that they could have made a strong showing of probable cause, and, in addition, there must be exigent circumstances, not of the police officers' creation, which militate in favor of immediate arrest ....

> The test of exigent circumstances for the making of an arrest for a felony without a warrant in West Virginia is whether, under the totality of the circumstances, the police had reasonable grounds to believe that if an immediate arrest were not made, the accused would be able to destroy evidence, flee or otherwise avoid capture, or might, during the time necessary to procure a warrant, endanger the safety or property of others. This is an objective test based on what a reasonable well-trained police officer would believe.

*Id.* Syl. Pts. 1 and 2.

■■ In the case before us, there was overwhelming probable cause to believe that a crime had been committed and that the appellant had committed it. The police had a description of the car that was used in the commission of the offense, the license number that was assigned to a car that matched that description, registration of the suspect vehicle in the appellant's name, and items in plain view in the vehicle that matched items reported stolen.

Furthermore, the circuit court heard testimony concerning whether exigent circumstances existed to justify a legal warrantless arrest and concluded that they did. The court found that the two deputy sheriffs had gone to the appellant's ex-wife's residence in Lashmeet in two separate police cruisers. When the officers knocked on the door of the house they observed the appellant run through the house in an obvious attempt to conceal himself. Furthermore, appellant's ex-wife did not respond to the deputies' knocks at the door for thirty minutes, and when she did answer the door she indicated that the appellant was at work. These actions implied that the appellant's ex-wife would assist him in any efforts to flee, conceal himself or destroy evidence.

The deputies testified that they were the only two deputy sheriffs on duty for on-the-road work at 7:30 a.m. and that if one of them had returned to Princeton to procure arrest and search warrants, the other deputy would have been unable to prevent the appellant from fleeing and, at the same time, protect the evidence in the car from being destroyed. Under these circumstances, where both the appellant and his ex-wife were cooperating in an effort to hide the appellant from the police, we cannot conclude that the trial court was wrong in determining that one deputy could not both prevent the appellant from fleeing and guard the evidence. Because both proba-

ble cause and exigent circumstances not created by the officers existed, we affirm the holding of the trial court that the warrantless arrest was lawful.

### III

■ In our own case of *State v. Craft, supra,* we held in Syllabus Point 8:

"Whether a consent to search is in fact voluntary or is the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances."

■ The evidence clearly indicates that the police explained to the appellant that he could either give them permission to search his vehicle or they would return to Princeton, procure a search warrant, and search the vehicle. Faced with that accurate description of his options, the appellant consented to the search and had his ex-wife open the trunk. Because a warrant is not required for a search which is authorized by a proper consent, the search in the case *sub judice* was lawful.

■ The government has the burden of demonstrating that consent was freely given and was not a result of duress. *Bumper v. North Carolina,* 391 U.S. 543, 549, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968). In determining whether the consent to a search was voluntary, a court must look at the totality of the circumstances in much the same way as it does in evaluating the voluntariness of confessions. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). We hold that the factual context in which consent was given in this case indicates that the consent was voluntary.

■ The United States Supreme Court faced a strikingly similar factual situation in *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). That case involved a warrantless arrest pursuant to an informant's tip that the suspect possessed stolen credit cards. After the arrest, the suspect was given his *Miranda* rights and consented to a search of his car which led to the discovery of the stolen cards. The defendant moved to have that evidence suppressed arguing that the warrantless arrest was illegal and that the cards were fruit of that poisonous tree.

The Supreme Court reversed a Ninth Circuit ruling in the defendant's favor. First, the Court held that an arrest based on probable cause and made in compliance with specific statutory guidelines was lawful. Turning to the issue of consensual search, the Court ruled that there was no evidence that the defendant's "will ha[d] been overborne and his capacity for self-determination critically impaired." *Id.* 423 U.S. at 424, 96 S.Ct. at 828, quoting *Schneckloth v. Bustamonte, supra* at 435, 96 S.Ct. at 833. The Court noted:

There was no overt act or threat of force against [the suspect] proved or claimed. There were no promises made to him and no indication of more subtle forms of coercion that might flaw his judgment. He had been arrested and was in custody, but his consent was given while on a public street, not in the confines of the police station. Moreover, the fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search.... There is no indication in this record that [the suspect] was a newcomer to the law, mentally deficient, or unable in the face of a custodial arrest to exercise a free choice. He was given *Miranda* warnings....

*Watson, supra* at 424–25, 96 S.Ct. at 828 (footnotes omitted). *See also Id.* at 425, 96 S.Ct. at 828–829: "[T]he evidence that [the suspect's] consent was the product of free will is so overwhelming that I would have held the consent voluntary even on the assumption that the preceeding warrantless arrest was unconstitutional, ...." (Powell, J. concurring).

In the case before us, appellant was neither threatened with an oppressive stick nor tempted with an illusory carrot. There were no strong-arm tactics nor promises of leniency. The officers accurately gave appellant his options: show us now or we will get a warrant and look later.

Accordingly, the judgment of the Circuit Court of Mercer County revoking the appellant's probation is affirmed.

Affirmed.