355 S.E.2d 356

**STATE of West Virginia**

v.

**Richard Lynn DYER.**

No. 17062.

Supreme Court of Appeals
of West Virginia.

Submitted Sept. 17, 1986.

Decided March 18, 1987.

Neal Kinsolving, Charleston, for appellant.

Doren Burrell, Asst. Atty. Gen., Charleston, for appellee.

McGRAW, Chief Justice:

This is an appeal from a final order of the Circuit Court of Kanawha County, dated February 21, 1985, which adjudged the appellant, Richard Lynn Dyer, guilty, after a jury trial, of the crime of causing a death while driving under the influence of alcohol, a felony under W.Va.Code § 17C–5–2(a) [1983]. We find no error warranting reversal of the conviction, and we affirm.

The facts of this case are essentially undisputed. At approximately 2:00 p.m. on November 18, 1983, a passing motorist found Mrs. Jeanne Gardner lying severely injured next to a drainage ditch in front of her Connell Road home just outside of Charleston. Although there apparently were no witnesses to the cause of Mrs. Gardner's injuries, a neighbor reported that she heard a loud crash from the roadway shortly after 1:30 p.m. and saw a blue and white truck or four-wheel-drive vehicle pull out of the ditch into the neighboring driveway and proceed down Connell Road. The evidence at the scene supported the conclusion that Mrs. Gardner had been struck by a hit-and-run driver.

In the course of their investigation, the police learned that a vehicle owned by the appellant and matching the description giv-

en by Mrs. Gardner's neighbor had been seen speeding down Connell Road at around 1:30 p.m. Trooper L.L. Nelson of the West Virginia Department of Public Safety drove to the appellant's home, where he observed a blue and white four-wheel-drive vehicle with recent damage to the passenger side parked in the driveway. Trooper Nelson found the appellant at home and asked to question him. After executing a written waiver of his *Miranda* rights,[1] the appellant gave a statement in which he admitted that he had been driving home from work on Connell Road at the time of the accident. The appellant stated that he had fallen asleep and run off Connell Road, striking a large rock, but denied having hit anyone. The appellant also admitted that he had been drinking earlier in the day.

At Trooper Nelson's request, the appellant agreed to return to the scene of the accident to speak to the investigating officer, Corporal Michael Rutherford of the Kanawha County Sheriff's Department. After orally advising the appellant of the *Miranda* warnings, Corporal Rutherford obtained the appellant's consent to return to his home and inspect his vehicle. Corporal Rutherford observed the damaged exterior and noticed what appeared to be blood on the hood and windshield. At Corporal Rutherford's request, the appellant agreed to allow his vehicle to be impounded for a thorough search and to accompany Corporal Rutherford to the sheriff's office to give a written statement and to submit to a breathalyzer test.

At the sheriff's office, Corporal Rutherford was advised by the prosecuting attorney that a blood-alcohol test was preferable to a breathalyzer test. The appellant agreed to submit to a blood test and signed a consent form. Corporal Rutherford again advised the appellant of his rights, and the appellant executed a second written waiver of rights form.

Corporal Rutherford then drove the appellant to the emergency room of a local hospital. While waiting for a technician to draw the blood, the appellant agreed to give a written statement. After having been verbally advised of his rights, the appellant dictated to Corporal Rutherford and signed a statement which was consistent with his prior oral statement to Trooper Nelson. The technician subsequently arrived and, after the appellant had executed two more consent forms, drew a sample of the appellant's blood at 6:21 p.m. Corporal Rutherford advised the appellant that he would seek a warrant charging the appellant with leaving the scene of an accident, a misdemeanor. At Corporal Rutherford's suggestion, the appellant accompanied him and was taken before a magistrate at approximately 7:00 p.m.

While the appellant was waiting for his bond to be posted, Corporal Rutherford took paint scrapings and samples of the substance which appeared to be blood from the appellant's vehicle and sent these items to the Criminal Investigation Bureau of the West Virginia Department of Public Safety for analysis. The paint scrapings were later found to have characteristics consistent with flecks of blue paint found on a large sandstone rock at the scene of the accident. The substance taken from the hood and windshield of the appellant's vehicle was found to contain human blood of the same type as Mrs. Gardner's.

On November 20, 1983, Corporal Rutherford was advised that Mrs. Gardner had died of the injuries she received on November 18, 1983. The following day, Corporal Rutherford, acting on the advice of the prosecuting attorney, withdrew the misdemeanor warrant. The appellant was subsequently indicted on the charge of causing a death while intoxicated, a felony.

Prior to trial, the appellant moved to suppress the statements he gave the police, the physical evidence seized from his vehicle and the results of the blood test. After several suppression hearings, the trial court denied these motions on the first day of trial.

On September 24, 1984, the case proceeded to trial before a jury. The evidence showed that the appellant finished work in

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Jackson County at 6:30 a.m. on November 18, 1983, and drove with two co-workers to Mink Shoals, Kanawha County, where he had left his vehicle. On the way, the three men shared a third of a pint of whiskey from a flask and stopped at a convenience store in Ripley where the appellant bought a six-pack of beer. The appellant drank one or two cans of beer during the trip and took the remaining cans of beer with him to his vehicle when he reached Mink Shoals at about 8:00 a.m. The appellant and one of his co-workers then drove to a tavern in Clendenin where they remained until about noon, when the tavern owner asked the appellant to leave. There was no testimony as to whether the appellant had been drinking at the tavern, but Dr. Irwin Sopher, the state medical examiner, testified that an average person would have to drink a total of 15 cans of beer or shots of whiskey between 6:30 a.m. and 12:00 noon [2] to have the blood alcohol content of .07 shown by the results of the chemical analysis of the blood sample taken at 6:21 p.m.

The case was submitted to the jury, and a verdict of guilty was returned on October 1, 1984. By order dated February 21, 1985, the appellant was sentenced to a term of not less than one nor more than three years imprisonment in the penitentiary. It is from that order that the appellant prosecutes this appeal.

### I

The appellant's principal contention on appeal is that the trial court erred in allowing the State to introduce into evidence the inculpatory statements he gave the police. The appellant asserts that although he was not formally arrested, he was taken into custody at his home by Trooper Nelson on the day of the alleged offense. He asserts that since the officer did not have a warrant to arrest him at that time, the inculpa-

tory statements subsequently obtained should have been excluded as the products of an illegal arrest.[3]

The evidence adduced at the suppression hearings showed that after Trooper Nelson spotted the suspect vehicle in the appellant's driveway, he parked his cruiser behind it, walked to the door of the appellant's home and knocked. Receiving no response, Trooper Nelson unsuccessfully inquired of a neighbor as to the appellant's whereabouts. As he was returning to his cruiser, Trooper Nelson met a woman walking up the driveway who identified herself as the appellant's wife. When Trooper Nelson explained that he wished to speak to the appellant, Mrs. Dyer stated that her husband was probably asleep and invited the trooper into the house.

Once inside, Mrs. Dyer fetched the appellant from the bedroom. Trooper Nelson advised the appellant that he was investigating a hit-and-run accident and asked to speak to him outside so that he would not have to discuss the particulars in front of his wife and children. The appellant consented and stepped onto the porch, where Trooper Nelson advised him of the details of the accident and of the fact that his vehicle may have been involved. The appellant agreed to be questioned about the incident and accompanied Trooper Nelson to the cruiser where he executed a written waiver of his rights and gave the inculpatory oral statement.

In view of these facts we cannot say the trial court erred in finding that Trooper Nelson did not, in fact, unlawfully arrest the appellant. We recognize that "[a] warrantless entry into a person's home either to effect his arrest or to seize his property therein contained violates the Fourth Amendment of the United States Constitution in the absence of probable cause and exigent circumstances." Syllabus point 2,

---

**2.** By his own admission, the appellant had had nothing to drink after leaving the tavern.

**3.** The appellant does not contend that the statements were obtained by the police in violation of the Fifth Amendment. Rather, the appellant asserts that his inculpatory statements were obtained pursuant to an illegal arrest, a violation

of the Fourth Amendment regardless of whether *Miranda* warnings were given. *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *State v. Mays*, 172 W.Va. 486, 307 S.E.2d 655 (1983); *State v. Stanley*, 168 W.Va. 294, 284 S.E.2d 367 (1981); *State v. Canby*, 162 W.Va. 666, 252 S.E.2d 164 (1979).

*State v. Davis,* 170 W.Va. 376, 294 S.E.2d 179 (1982). *See also State v. Craft,* 165 W.Va. 741, 272 S.E.2d 46 (1980). In this case, however, it is uncontroverted that Trooper Nelson entered the appellant's home at the invitation of the appellant's wife. The entry was not, therefore, the type of nonconsensual intrusion prohibited by the Fourth Amendment. *See Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

■ Moreover, there is no showing that Trooper Nelson entered the appellant's home with the intention of arresting him or, once inside, exercised any kind of control or influence over the appellant which would lead a reasonable person to believe that he had been taken into custody. All of the evidence indicates that the appellant voluntarily accompanied the officer outside and willingly entered the cruiser to make a statement. In the absence of a showing that the appellant was not free to refuse to accompany Trooper Nelson or to return to the sanctity of his home once outside, there is no evidence of an illegal detention sufficient to vitiate the subsequent inculpatory statements. *See Dunaway v. New York, supra; State v. Ellsworth,* 175 W.Va. 64, 331 S.E.2d 503 (1985); *State v. Stanley, supra.* Accordingly, we find no error in the trial court's refusal to suppress the appellant's statements as the product of an illegal arrest.[4] *See State v. White,* 171 W.Va. 658, 301 S.E.2d 615 (1983).

The appellant also contends that the inculpatory statements were inadmissible because he was not taken before a magistrate without undue delay after his arrest as required by W.Va.Code § 62-1-5 (1984 Replacement Vol.).[5] Although it is unclear from the record exactly when the appellant in this case was arrested in the sense that his liberty was restrained,[6] it is evident that there was probable cause to detain him after he made the inculpatory oral statement to Trooper Nelson at approximately 4:00 p.m. It is not unreasonable to assume that the appellant was no longer free to leave at that point and therefore should have been taken before an impartial magistrate without delay. *See State v. Mitter,* 169 W.Va. 652, 289 S.E.2d 457 (1982). However, the appellant did not appear before a magistrate until approximately 7:00 p.m. He contends that this delay of 3 to 4 hours was unreasonable and renders his statements inadmissible.

■ An unreasonable and unjustified delay in taking an accused before a magistrate after his initial arrest may, in itself, render a confession inadmissible at trial. *State v. Persinger,* 169 W.Va. 121, 286 S.E.2d 261 (1982). However, the failure to strictly comply with the requirements of W.Va.Code § 62-1-5 does not necessarily vitiate every confession; rather, the delay is treated as one factor in evaluating the voluntariness of the confession under traditional principles of due process. *State v. Mason,* 162 W.Va. 297, 249 S.E.2d 793 (1978). " 'The delay in taking a defendant to a magistrate may be a critical factor [in the totality of the circumstances making a confession involuntary and hence inadmissible] where it appears that the primary purpose of the delay was to obtain a confession from the defendant.' Syllabus Point 6, *State v. Persinger,* [169 W.Va. 121], 286

---

**4.** Similarly, there is no merit to the appellant's contention that virtually all of the evidence presented against him at trial was obtained as the result of this allegedly unlawful arrest.

**5.** W.Va.Code § 62-1-5 provides:

An officer making an arrest under a warrant issued upon a complaint, or any person making an arrest without a warrant for an offense committed in his presence, shall take the arrested person without unnecessary delay before a justice of the county in which the arrest is made. When a person arrested without a warrant is brought before a justice, a complaint shall be filed and a warrant issued forthwith. The officer executing the warrant shall make return thereof to the justice before whom the defendant is brought.

**6.** After the appellant made the inculpatory statement to Trooper Nelson, he was in the company of police officers almost continuously, but he was allowed to remain alone for brief periods of time, was never handcuffed or otherwise physically restrained and was allowed to speak with family members when he requested. The appellant was not explicitly informed that he would be placed under arrest until he was ready to leave the hospital with Corporal Rutherford at about 6:30 p.m.

S.E.2d 261 (1982), as amended." Syllabus point 1, *State v. Guthrie*, 173 W.Va. 290, 315 S.E.2d 397 (1984).

█ It does not appear that the primary purpose of the delay in this case was to elicit a confession. The police already had the inculpatory oral statement the appellant made to Trooper Nelson. The second, written statement, though given during the course of the delay, was substantially the same as the prior oral statement. Moreover, the voluntariness of the statements was tested by the appellant at the pretrial suppression hearings and resolved by the trial court in favor of admissibility. "A trial court's decision regarding the voluntariness of a confession will not be disturbed unless it is plainly wrong or clearly against the weight of the evidence." Syllabus point 3, *State v. Vance*, 162 W.Va. 467, 250 S.E.2d 146 (1978). In view of the facts of this case, we cannot say that the time lapse before presentation of the appellant to a magistrate was such as would require the suppression of the appellant's inculpatory statements.

## II

The appellant also contends that the trial court erred in refusing to exclude the paint scrapings and blood samples seized from his automobile. After a hearing on the matter, the trial court denied the appellant's motion to suppress these items on the ground that the appellant had consented to the impoundment and search of his vehicle. The appellant now concedes that he consented to the impoundment and search, but contends that consent was involuntary because it was given while he was in custody.

█ Evidence acquired by the consent of the accused is admissible at trial unless the consent was not voluntary. *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974). "Where the validity of a search rests upon the consent of the accused, the State has the burden of proving that ... it was freely and voluntarily given, a burden that is not satisfied by showing a mere

submission to a claim of lawful authority." *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.E.2d 229 (1983). *See also State v. Thomas, supra.* " 'Whether a consent to a search is in fact voluntary or is the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances.' Syl. pt. 8, *State v. Craft*, [165 W.Va. 741], 272 S.E.2d 46 (1980)." Syllabus point 4, *State v. Farmer*, 173 W.Va. 285, 315 S.E.2d 392 (1983). The mere fact that the defendant is in custody is not, of itself, sufficient to demonstrate that the consent to search was not voluntary. 315 S.E.2d at 396, *citing Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

█ In the case at bar, there was no evidence that the appellant's consent to search the vehicle was the product of implied or express threats, force or promises of leniency. Although in custody, the appellant was apparently treated courteously and had been advised more than once of his *Miranda* rights. There was no showing that he was incapable of understanding his rights or the consequences of his actions. All of the evidence indicates that the appellant's consent to the search was the product of free choice and a desire to cooperate with the police. In these circumstances, we cannot conclude that his consent was invalidated merely by the fact that he was in custody. Accordingly, we find no error in the trial court's refusal to suppress the evidence seized.

## III

The appellant next contends that the trial court erred in allowing the State to introduce into evidence the results of the blood-alcohol tests performed at the hospital with the appellant's consent. At the pretrial hearings, the appellant moved to suppress this evidence on the ground that the blood sample was not drawn within two hours of his arrest or of the alleged offense as required by W.Va.Code § 17C–5–8 (1986 Re-

placement Vol.).[7] The trial court found that the specimen had not, in fact, been taken within the two-hour time period, but concluded that the results were admissible as long as they were not used as *prima facie* evidence of intoxication.

■ We do not believe the admission of the blood test results in this case amounted to reversible error. The test results were not used at trial in conjunction with the statutory presumptions regarding intoxication or as direct evidence that the appellant was under the influence of alcohol at the time of the alleged offense. The State's expert, Dr. Sopher, was not questioned nor did he offer an opinion as to the appellant's probable blood alcohol level at the time of the alleged offense or whether he was, in fact, intoxicated at that time. Rather, the evidence was relied upon at trial to show that the appellant had consumed alcoholic beverages in substantial amounts on the day in question and was, therefore, relevant evidence of a probative fact. Similar evidence had been offered by other of the State's witnesses and had been contained in the appellant's own statements. Accordingly, in view of the peculiar circumstances of this case, including the structure of the State's examination of its expert and the nature of his expert testimony, we find no error in the admission of the results of the blood test which would warrant reversal of the appellant's conviction.

## IV

The appellant's final assignment of error is that the State failed to allege and prove an essential element of the offense of which he was convicted. The felony of causing a death while driving under the influence of alcohol is set forth in W.Va. Code § 17C–5–2(a) [1983], which provided, in pertinent part:

(a) Any person who:

(1) Drives a vehicle in this State while he is:

(A) Under the influence of alcohol,

\*    \*    \*    \*    \*    \*

and

(2) When so driving does any act forbidden by law or fails to perform any duty imposed by law in the driving of such vehicle, which act or failure proximately causes the death of any person

7. W.Va.Code § 17C–5–8 provides:
Upon trial for the offense of driving a motor vehicle in this State while under the influence of alcohol, controlled substances or drugs, or upon the trial of any civil or criminal action arising out of acts alleged to have been committed by any person driving a motor vehicle while under the influence of alcohol, controlled substances or drugs, evidence of the amount of alcohol in the person's blood at the time of the arrest or of the acts alleged, as shown by a chemical analysis of his blood, breath or urine, is admissible, if the sample or specimen was taken within two hours from and after the time of arrest or of the acts alleged, and shall give rise to the following presumptions or have the following effect:
(a) Evidence that there was, at that time, five hundredths of one percent or less, by weight, of alcohol in his blood, shall be prima facie evidence that the person was not under the influence of alcohol;
(b) Evidence that there was, at that time, more than five hundredths of one percent and less than ten hundredths of one percent, by weight, of alcohol in the person's blood shall be relevant evidence, but it is not to be given prima facie effect in indicating whether the person was under the influence of alcohol;

(c) Evidence that there was, at that time, ten hundredths of one percent or more, by weight, of alcohol in his blood, shall be admitted as prima facie evidence that the person was under the influence of alcohol.
Percent by weight of alcohol in the blood shall be based upon milligrams of alcohol per one hundred cubic centimeters of blood.
A chemical analysis of a person's blood, breath or urine, in order to give rise to the presumptions or to have the effect provided for in subdivisions (a), (b) and (c) of this section, must be performed in accordance with methods and standards approved by the state department of health. A chemical analysis of blood or urine to determine the alcoholic content of blood shall be conducted by a qualified laboratory or by the state police scientific laboratory of the criminal identification bureau of the department of public safety.
The provisions of this article shall not limit the introduction in any administrative or judicial proceeding of any other competent evidence bearing on the question of whether the person was under the influence of alcohol, controlled substances or drugs.

within one year next following such act or failure, and

(3) Commits such act or failure in reckless disregard of the safety of others, and when the influence of alcohol ... is shown to be a contributing cause to such death,

(4) Shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary for not less than one nor more than three years and shall be fined not less than one thousand dollars nor more than three thousand dollars.

\* \* \* \* \* \*

Neither the indictment nor the instructions offered by the State concerning the elements of this offense specified the act or omission which the appellant was alleged to have committed in reckless disregard of the safety of others. The court did, however, instruct the jury as to the elements of the offense of reckless driving.[8]

 The appellant first contends that the indictment was fatally defective in its failure to allege reckless driving as the act or omission of the appellant which gave rise to the charge against him. We believe, however, that the felony of causing a death while driving under the influence of alcohol is not unlike the offense of felony-murder in that the underlying offense need not be specified in the indictment. *See State v. Young*, 173 W.Va. 1, 311 S.E.2d 118 (1983). The indictment here was couched in the statutory language of W.Va.Code § 17C–5–2(a). No complaint that it failed to plainly inform the appellant of the charges against him was raised until after all the evidence had been submitted. Accordingly, we find no defect on the face of the indictment which would warrant reversal of the appellant's conviction.

Nor do we find any reversible error in the trial court's refusal to require the State to specify the act or omission relied upon in its instruction as to the elements of the offense with which the appellant was charged. The jury was instructed

as to that act or omission by separate instruction. " 'When instructions are read as a whole and adequately advise the jury of all necessary elements for their consideration, the fact that a single instruction is incomplete or lacks a particular element will not constitute grounds for disturbing a jury verdict.' Syllabus Point 6, *State v. Milam*, [159 W.Va. 691], 226 S.E.2d 433 (1976)." Syllabus Point 8, *State v. Walls*, 170 W.Va. 419, 294 S.E.2d 272 (1982).

### V

For the reasons stated herein, we find no error which would warrant reversal of the appellant's conviction.[9] Accordingly, the judgment of the Circuit Court of Kanawha County is affirmed.

Affirmed.

NEELY, J., dissents on the grounds that the jury was not properly instructed concerning the requirement of W.Va.Code 17c–5–2(a)(3) [1983] that an act must be committed that is in reckless disregard of the safety of others in addition to driver drunkenness and an unlawful act.

---

8. State's Instruction No. 8 provided: "The court instructs the jury that reckless driving, driving a motor vehicle upon a public highway in a willful or wanton disregard of the safety of others or property, is an act forbidden by law in the State of West Virginia."

9. In view of our resolution of the issues raised by the appellant we find no grounds for reversing the conviction under the "cumulative error" doctrine. *See State v. Hall*, 172 W.Va. 138, 304 S.E.2d 43 (1983).