THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ARNOLD F. PROPER, Defendant-Appellant.

Fifth District    No. 78-111

Opinion filed January 31, 1979.

Bernard A. Paul & Associates, of Marion, for appellant.

Robert H. Howerton, State's Attorney, of Marion (Raymond F. Buckley, Jr., and Martin N. Ashley, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:

Following a jury trial in the Circuit Court of Williamson County, defendant was convicted of the murder of his wife, Barbara A. Proper. Defendant appeals challenging the propriety of the trial court's refusal to instruct the jury on criminal capacity, voluntary intoxication and on the lesser offense of voluntary manslaughter. In addition, defendant challenges the trial court's ruling permitting the State to re-create the murder scene in a separate courtroom.

The testimony at trial revealed that during the day prior to the death of Barbara A. Proper no tension or controversy existed between defendant and his wife. At approximately 2 p.m. of that day, defendant and his family went to the home of Bill Fisher, where they socialized and ate dinner. During this visit, which lasted approximately nine hours, defendant and his wife had a number of drinks. Defendant estimated that he had 12 beers before supper and one to two six-packs thereafter. On cross-examination, defendant admitted that he had previously made a statement to the police that he had had only 12 beers. Defendant testified that "I guess I was drunk" upon leaving the Fisher residence at 11 p.m. that evening. Bill Fisher testified that defendant had 8 to 10 beers the entire evening and appeared sober when he left. Robert Woodson, a guest at the Fisher residence, testified that when he left at 9 p.m., defendant did not appear intoxicated.

During the car ride home, defendant and his wife began to argue about a $109 phone bill. The quarrel continued at home shortly after Barbara put her son to bed. Defendant stated that they did not need a telephone if they could not keep the bills down and then proceeded to rip the phone off the wall. Barbara then told defendant that she was going to take their son and live in Chicago. Apparently, she had previously left her husband for a short period of time. He asked her not to go, but she refused his request.

Defendant was aware that he had a .45 automatic pistol in his back

pocket although he could not remember how it got there. He later admitted that his prior statement to the police indicated that he had taken the gun from his dresser while his wife was putting their son to bed. He removed the gun from his pocket and pointed it at his wife to scare her. He raised the weapon waist high and it "went off." He continued to shoot the gun until all eight shots were fired. It was later determined that Barbara Proper died from the multiple gunshot wounds. After defendant saw Barbara fall in front of him, he ran out of the house and went to the police station.

Sandra Lee, the police dispatcher, testified that defendant walked into the police station at 12:15 that evening. Defendant told Ms. Lee that he had shot his wife and needed help. Defendant was crying and kept beating his hands against his head. He showed emotions ranging from anger to sadness and shouted that he "didn't mean to do it." Defendant realized that his son was still at home and asked for someone to remove him before he saw his mother. Ms. Lee was close enough to defendant to have smelled alcohol, but did not. In her judgment defendant was not intoxicated. One of the officers at the police station testified that defendant appeared to be sober.

At trial, the State, over the objections of defense counsel, was permitted to re-create the living room of the Proper residence in an adjoining courtroom. As part of the set, the State used the couch which was covered with blood stains and, according to defense counsel, human excrement. Both the courtroom and the living room rug were sprayed with "Glade" to contain what was characterized as a musty odor. In overruling defendant's objections, the trial court stated that the couch was less gruesome than the photographs already admitted into evidence; that the demonstration would be relevant to shed light on whether defendant had the requisite intent to commit murder; and that the reconstruction would aid the jury in understanding the layout of the room in which the shooting occurred. After the State rested, defense counsel chose to examine defendant in the courtroom containing the re-creation exhibit. After defendant indicated that the television and some lamps were missing, he utilized the set to recount the events of the shooting.

At the instruction conference, defendant tendered Illinois Pattern Instructions, Criminal, No. 24.02 ("Voluntary Intoxication or Drugged Condition") (hereinafter IPI), IPI Criminal No. 25.02 ("Issues in Defense of Voluntary Intoxication or Drugged Condition") and IPI Criminal No. 7.04 ("Issues in Voluntary Manslaughter-Provocation"). In refusing these instructions, the trial court stated that there was no evidence that would support a voluntary manslaughter conviction nor sufficient evidence that would support the defense of voluntary intoxication.

The State argues that defendant has waived any contentions of error by his failure to file a post-trial motion. Notwithstanding the general rule that the failure to proffer a post-trial motion constitutes a waiver of errors raised on appeal (*People v. Hammond*, 48 Ill. App. 3d 707, 362 N.E.2d 1361 (5th Dist. 1977)), we nevertheless feel compelled to give consideration to defendant's contentions to determine the existence of any possible plain error.

Defendant first argues that the trial court erred in refusing to allow the jury to consider evidence of defendant's insanity at the time of the commission of the offense. Apparently, defendant objects to the trial court's refusal of defense instruction No. 2 (IPI Criminal. No. 25.02), which provides in part:

> "To sustain the charge of murder, the State must prove the following propositions:
>
>         * * *
>
> Third: That the defendant was then capable of acting knowingly or intentionally."

Although this instruction is usually submitted to the jury as part of the affirmative defense of voluntary intoxication, defendant sought to introduce it to present a defense that defendant's diminished mental state prevented him from forming the requisite intent to commit murder. We note that defense counsel did not tender IPI Criminal No. 25.01 ("Issues in Defense of Insanity") and apparently conceded at oral argument that defendant was not insane at the time of the offense. Nevertheless, he asserts that the jury should have been allowed to consider the possibility of defendant's insanity. While it is not clear what defendant is contending on appeal, we give him the benefit of the doubt and address the issue whether the court erred in refusing to submit the insanity defense to the jury.

The law is well established that in order to present the issue of an accused's insanity, the evidence must be sufficient to raise in a juror's mind a reasonable doubt of defendant's sanity at the time of the commission of the offense. See *People v. Redmond*, 59 Ill. 2d 328, 320 N.E.2d 321 (1974); *People v. Smothers*, 55 Ill. 2d 172, 302 N.E.2d 324 (1973).

■▌ In the present case, the record is devoid of evidence to even suggest defendant's insanity. The only evidence introduced by defendant in support of his contention was defendant's conduct in the police station following the shooting incident. The testimony reveals that defendant, in an excited state, was hitting his head with his hands and wandering around the police station. We note that in *People v. Redmond* the evidence that the defendant did not act "normal" at the time of his arrest, along with the defendant's statement that he had "lost his mind," was

insufficient to raise a reasonable doubt of the defendant's insanity. Considering defendant's grief and anger in the instant case, defendant's reaction to the shooting of his wife was not in the least unusual.

Defendant next argues that the trial court erred in refusing to instruct the jury on voluntary intoxication. The rule is that in order to raise voluntary intoxication as a defense to a charge of murder so as to reduce the offense to manslaughter, the accused must show that the intoxication was so extreme as to suspend entirely the power of reason. *People v. Gonzales*, 40 Ill. 2d 233, 239 N.E.2d 783 (1968); *People v. Smith*, 26 Ill. App. 3d 1062, 325 N.E.2d 623 (4th Dist. 1975).

The testimony presented at trial reveals little or no evidence that defendant was so intoxicated as to negate the intent to commit murder. All of the witnesses who had observed defendant immediately prior to and following the incident testified that he had appeared sober. The only evidence supporting an intoxication defense is defendant's own proclamations that he consumed close to a case of beer and "guessed" that he was drunk. This testimony was contradicted, however, by defendant's prior written statement to the police that he had 12 beers during his entire visit to the Fisher residence. In addition, the transparency of defendant's defense becomes apparent when one considers defendant's coherent and detailed recollection of the events immediately prior to the shooting.

Defendant next argues that the trial court erred in its refusal to submit an instruction to the jury on voluntary manslaughter. The law is well settled that a manslaughter instruction tendered by a defendant must be given if there is evidence in the record which, if believed by the jury, would reduce the crime to manslaughter. (*People v. Simpson* (1978), 74 Ill. 2d 497, 384 N.E.2d 373; *People v. Handley*, 51 Ill. 2d 229, 282 N.E.2d 131 (1972), *cert. denied*, 409 U.S. 914, 34 L. Ed. 2d 175, 93 S. Ct. 247.) It is equally settled that such an instruction should not be submitted to the jury if the evidence clearly demonstrates that the crime was murder and there is no evidence to support a manslaughter conviction. *People v. Simpson*; *People v. Handley*.

The evidence in the record reveals no support for defendant's contention that a voluntary manslaughter instruction should have been given. A person commits voluntary manslaughter by the unlawful killing of an individual while under a sudden and intense passion resulting from serious provocation. (Ill. Rev. Stat. 1975, ch. 38, par. 9—2.) The provocation sufficient to support a reduced charge from murder to voluntary manslaughter must be such as to excite an intense passion in a reasonable person. *People v. Arnold*, 17 Ill. App. 3d 1043, 309 N.E.2d 89 (3d Dist. 1974).

Defendant alleges that the argument with his wife over a $109 phone bill was an adequate provocation to justify the giving of an

instruction on voluntary manslaughter. Words between the victim and the accused, no matter how abusive or aggravating, do not constitute sufficient provocation to establish voluntary manslaughter in the absence of other serious provocation. (See *People v. Curwick*, 33 Ill. App. 3d 757, 338 N.E.2d 468 (3d Dist. 1975).) A careful search of the record reveals no evidence other than heated words which served to provoke defendant. It is, therefore, extreme to suggest that a quarrel about a phone bill would incite a reasonable person to such an intense passion as to commit a brutal attack with a deadly weapon. There being no evidence to support a voluntary manslaughter charge, it was proper for the trial court to refuse defendant's instruction on this matter.

Lastly, defendant argues that the trial court erred in allowing the State to re-create the living room of the Proper residence in a nearby courtroom using the blood-stained couch. Although we find no Illinois authority concerning the propriety of re-creating the scene of an offense in the courtroom, it is the general rule that the admission of demonstrative evidence is a matter within the discretion of the trial court. *People v. Fair*, 45 Ill. App. 3d 301, 359 N.E.2d 848 (1st Dist. 1977).

In the instant case, we find no abuse of discretion in permitting the State to re-create the murder scene. As stated by the trial court, the re-creation set enabled the jury better to understand the events constituting the offense and evaluate defendant's contention that he lacked the intent to kill. In addition, the trial court stated that the blood-stained couch was less gruesome than the photographs of the deceased admitted into evidence. Defense counsel apparently agreed that the utilization of the couch was not prejudicial as he elected to examine defendant in the courtroom containing the living room set.

For the reasons stated, the judgment of the Circuit Court of Williamson County is affirmed.

Affirmed.

JONES and KUNCE, JJ., concur.