STATE of Wisconsin, Plaintiff-Respondent,

v.

Carl Henry STREGE, Defendant-Appellant-Petitioner.

Supreme Court

No. 82–1710–CR. Argued January 5, 1984.—
Decided January 31, 1984.

(Also reported in 343 N.W.2d 100.)

For the defendant-appellant-petitioner there were briefs and oral argument by *Mark Lukoff,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Sally L. Wellman,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

DAY, J.   This is a review of an unpublished decision of the court of appeals affirming the judgment of the circuit court for Milwaukee county, Honorable Michael J. Barron, Circuit Judge, convicting Carl Henry Strege of first-degree murder.[1]   There are two issues on this re-

[1] Section 940.01, Stats. 1979–80 which governs first-degree murder provides:

"**940.01   First-degree murder.**   (1) Whoever causes the death of another human being with intent to kill that person or another is guilty of a Class A felony.

view: (1) whether the trial court erred in denying the defendant's request for a jury instruction on the defense of voluntary intoxication; and (2) whether the issue of the trial court's refusal to give the requested instruction is properly before this court. We hold that the defendant did not produce evidence entitling him to an instruction on voluntary intoxication. We also hold that the trial court's decision denying the requested instruction was properly presented for review by this court. We therefore affirm the decision of the court of appeals.

At approximately 8:30 p.m. on the evening of November 1, 1980, the lifeless body of Richard Eugene Lewandowski was discovered on the floor of the Milwaukee service station where he was employed as an attendant. He had been shot. On February 23, 1981, the defendant Carl Strege was arrested on a state arrest warrant. At that time he made a statement to police in which he confessed to the shooting. On March 4, the defendant was waived into criminal court by the Children's Division of the Milwaukee County Circuit Court where he was formally charged with first-degree murder and armed robbery. He pleaded not guilty to the murder charge and was tried before a jury on November 18, 1981, which returned a verdict of guilty of first-degree murder.[2] The evidence adduced at trial, viewed in the light most favorable to the defendant, revealed the following sequence of events on the day of the shooting.

On November 1, 1980, the defendant, who was sixteen and one-half years old at the time, met a friend named John Fraser and the two youths spent the afternoon

---

"(2) In this chapter 'intent to kill' means the mental purpose to take the life of another human being."

[2] The defendant pled guilty to the armed robbery charge. He was originally sentenced to thirteen years in prison which was later reduced to five years to be served consecutively with the sentence on the murder conviction.

together from one or two o'clock on. At some point during the day, the defendant asked Fraser for payment of twenty dollars that Fraser owed him. Fraser said he couldn't pay the twenty dollars but that he knew of some gas stations that would be easy to rob. They obtained a twenty-two caliber handgun and bullets from two friends and selected a service station near where Fraser lived. They conceived a plan of using a five dollar bill and asking for change as a pretense for entering the station.

The defendant entered the gas station with the loaded gun concealed under his shirt tucked in the waistband of his pants, while Fraser, who was afraid he would be recognized by the attendant, waited across the street behind a fence. Fraser had told the defendant before he entered the station that the attendant was "crazy" and would turn him in if given the opportunity. The defendant produced the five dollar bill and asked for change. Lewandowski took the five and returned five ones. The defendant then handed back one of the ones and asked for four quarters. As Lewandowski was complying with the request, the defendant removed the gun and shot him in the arm. After firing the first shot, the defendant believed Lewandowski was coming toward him to take the gun and use it against him. He panicked and fired three more shots, one of which penetrated Lewandowski's heart killing him. The defendant denied that he was aiming at Lewandowski or that he intended to kill him.

The defendant testified that prior to the shooting he had drunk ten to fifteen beers and taken an unspecified quantity of valium. He also testified that he was "pretty high" or "well up there." At the conclusion of the evidence, the defendant requested an instruction on the defense of voluntary intoxication. The trial court denied the request stating:

"It's clear [from *State v. Schulz,* 102 Wis. 2d 423, 307 N.W.2d 151 (1981) that] in order to place intoxication [in] issue in a given case, it will be necessary for the defendant to come forward with some evidence . . . of his impaired condition. This evidence must be more than a mere statement that the defendant was intoxicated. The evidence must be credible and sufficient to warrant the jury's consideration of the issue as to whether the defendant was intoxicated to the extent it materially affected his or her ability to form the requisite intent. To me, there has got to be some evidence in the record beyond the fact that he was high and beyond the fact that he had, in fact, consumed some alcoholic beverages and taken some Valiums afterward. You have to show some impairment of his condition, and there's absolutely none in this record—not even one shred or scintilla of evidence—that this gentleman's condition was so impaired. He testified to every detail as to what took place from the time he met John Fraser in the afternoon until such time as he split the gas station and went back to see John to split the proceeds."

The court instructed the jury on first-dergee murder and both forms of second-degree murder.[3] The jury found the defendant guilty of first-degree murder and the court imposed the mandatory sentence of life imprisonment.

The defendant appealed to the court of appeals which agreed with the defendant's contention that the court erred in refusing to instruct the jury on the defense of voluntary intoxication. A majority of the court nevertheless affirmed the conviction on the grounds that the

---

[3] Second-degree murder is governed by § 940.02, Stats. (1979–80) which states:

"940.02. **Second-degree murder.** Whoever causes the death of another human being under either of the following circumstances is guilty of a Class B felony:

"(1) By conduct imminently dangerous to another and evincing a depraved mind, regardless of human life; or

"(2) As a natural and probable consequence of the commission of or attempt to commit a felony."

error was harmless. One judge dissented. We affirm the decision of the court of appeals on the grounds that there was no error in the trial court's refusal to give the requested instruction.

The defense of voluntary intoxication is governed by sec. 932.42 (2), Stats. which states: "939.42 Intoxication. An intoxicated or drugged condition of the actor is a defense only if such condition: . . . (2) Negatives the existence of a state of mind essential to the crime." Voluntary intoxication is not a legal excuse for crime. However, when a specific intent is an essential element of the crime charged, the fact that the defendant was intoxicated may be urged as evidence that the required intent was not present. The defendant in this case was charged with first-degree murder, an essential element of which is an intent to kill. If the defendant was incapable of forming an intent to kill at the time of the shooting due to intoxication, he could not be guilty of first-degree murder.[4]

Ultimately the question of whether a defendant's intoxicated condition rendered him incapable of forming the intent necessary for the commission of a crime is one of fact for the jury. However, before the matter can be considered by the jury, the court must make a preliminary determination of the sufficiency of the evidence to support a jury finding on the issue. This case presents the question of what evidence is necessary to entitle the defendant to a jury instruction on the defense of voluntary intoxication.

This court addressed the precise question raised by this case in *Larson v. State,* 86 Wis. 2d 187, 271 N.W.2d

---

[4] We note that in pleading guilty to the charge of armed robbery, the defendant implicitly admitted that at the time the robbery and shooting took place he had the capacity to and did form the intent to steal.

647 (1978). In *Larson,* the defendant, who was appealing from a first-degree murder conviction, had testified that on the day of the shooting "he had had quite a few drinks but was not completely drunk." 86 Wis. 2d at 193. The court said that a defendant is entitled to an intoxication instruction when, "viewing the evidence in the light most favorable to the defendant, a jury could reasonably have found that he was so intoxicated that he lacked the intent to kill." 86 Wis. 2d at 195. (Citations omitted.) The court also said that "[t]he degree of a defendant's intoxication may be determined from his conduct, his own testimony regarding his condition, and the testimony of witnesses." 86 Wis. 2d at 195. (Citations omitted.)

Based on those standards, the court concluded that there was no error in the trial court's decision not to instruct the jury on the defense of voluntary intoxication. The court pointed out that the justification for giving the instruction would have to have been based on inferences drawn from the defendant's testimony as to how much he had to drink. Other witnesses had testified that the defendant did not appear intoxicated. Moreover, his detailed account of the events of the day when the shooting occurred demonstrated a "remarkable recollection" of what happened. 86 Wis. 2d at 195–196.

In *State v. Guiden,* 46 Wis. 2d 328, 331, 174 N.W.2d 488 (1970), this Court described the degree of intoxication necessary to constitute the defense of voluntary intoxication.

"The 'intoxicated or drugged condition' to which the statute refers is not the condition of alcohol-induced incandescence or being well-lit that lowers the threshold of inhibitions or stirs the impulse to criminal adventures. It is that degree of complete drunkenness which makes a person incapable of forming intent to perform an act or commit a crime. To be relieved from responsibility for criminal acts it is not enough for a defendant to

establish that he was under the influence of intoxicating beverages. He must establish that degree of intoxication that means he was utterly incapable of forming the intent requisite to the commission of the crime charged."

The evidence necessary to raise the defense of intoxication is inextricably linked to the degree of intoxication required to constitute the defense. Evidence of a lesser state of intoxication which does not meet the legal standard of the degree of intoxication which forms a defense to a crime is insufficient to warrant an instruction on the issue. As the passage quoted from *Guiden* makes clear, it is not enough for the defendant to establish that he was intoxicated to be relieved of criminal responsibility. It follows, therefore, that evidence that the defendant was intoxicated is not enough to support a jury finding of lack of intent due to intoxication and therefore not enough to warrant a jury instruction on the issue.

This court's most recent pronouncement on the defense of voluntary intoxication came in *State v. Schulz,* 102 Wis. 2d 423, 307 N.W.2d 151 (1981). The question in *Schulz* was not whether a voluntary intoxication instruction was warranted but whether the instruction, as given,[5] denied the defendant due process of law. The

---

[5] The instruction given in *Schulz* was not the standard intoxication instruction. Wis. JI—Criminal, Part I, 765, if it applied to this case, would have read as follows:

"The defense of intoxication is an issue in this case.

"The Criminal Code of Wisconsin provides that an intoxicated condition is a defense if such condition negatives the existence of a state of mind essential to the crime.

"Ordinarily, intoxication will not relieve a person from responsibility for his criminal acts. However, where a certain state of mind or intent is an essential element of the crime, an accused is not guilty if, at the time of the commission of the alleged criminal act, he was so intoxicated that he was unable to form the essential intent or have the essential mental state.

court held that the jury instruction used, which was based on the above quoted passage from *State v. Guiden,* could reasonably have been understood by the jury as placing upon the defendant the burden of proving that he did not intend to kill his victim. The defendant was therefore denied his constitutional right to have the state prove beyond a reasonable doubt every essential element of the crime. The court, however, approved the language of the *Guiden* opinion as stating the correct standard when a voluntary intoxication instruction is warranted. "The language of the *Guiden* opinion may well be an accurate reflection of the state of the law as it relates to an appellate determination of sufficiency of the evidence or to a trial court's decision to instruct a jury on intoxication in the first instance." 102 Wis. 2d at 434. (Footnotes omitted.) The court further stated:

"Although the accused may not be required to assume a burden of persuasion relative to his 'defense' of intoxication, this is not to say that in every case the state must prove the absence of intoxication beyond a reasonable doubt. The principles of due process are not violated if a burden of production—as opposed to a burden of persuasion—is placed upon the accused to come forward with 'some' evidence in rebuttal of the state's case. . . . In order to place intoxication in issue in a given case, it will be necessary for the defendant to come forward with

"In this case, defendant is charged with the crime of first-degree murder of which one of the essential elements is the intent to kill. The defendant claims that, at the time of the alleged offense, his condition from the use of drugs and intoxicating liquor was such that he did not form such intent.

"If the defendant, because of his condition, was incapable of forming and, therefore, did not form the intent to kill, then you must not find him guilty of first-degree murder as charged in the information.

"If you have any reasonable doubt as to whether or not he was so intoxicated, you must give the defendant the benefit of that doubt and find him not guilty of first-degree murder."

some evidence of his impaired condition. This evidence must be more than a mere statement that the defendant was intoxicated. The evidence must be credible and sufficient to warrant the jury's consideration of the issue as to whether the defendant was intoxicated to the extent it materially affected his or her ability to form the requisite intent. The test which the trial court must apply is whether, construing all the evidence produced most favorably to the defendant, a reasonable juror could conclude that the defendant's state of intoxication—in the words of the statute—'negative[d] the existence of a state of mind essential to the crime.' " 102 Wis. 2d at 430. Citations omitted.)

These cases establish that in order to qualify for an instruction on the defense of voluntary intoxication, the defendant must produce evidence sufficient to raise intoxication as an issue. To do this he must come forward with some evidence of the degree of intoxication which constitutes the defense. An abundance of evidence which does not meet the legal standard for the defense will not suffice. There must be some evidence that the defendant's mental faculties were so overcome by intoxicants that he was incapable of forming the intent requisite to the commission of the crime. A bald statement that the defendant had been drinking or was drunk is insufficient—insufficient not because it falls short of the quantum of evidence necessary, but because it is not evidence of the right thing. In order to merit an intoxication instruction in this case, the defendant must point to some evidence of mental impairment due to the consumption of intoxicants sufficient to negate the existence of the intent to kill.

Applying these standards to the present case, we conclude that the evidence produced by the defendant did not warrant an instruction on the defense of voluntary

intoxication. The defendant testified that prior to the robbery and shooting he had consumed ten to fifteen beers and an unspecified amount of valium. There is nothing in the record indicating when or over what period of time the beer was consumed. There was no expert testimony on the likely effect of either or both of those drugs on a person of the defendant's size or with the defendant's drug use history. This evidence of the defendant's drug and alcohol consumption falls short of the evidence of impairment necessary to warrant an instruction on voluntary intoxication.

The defendant also testified as to the effect of the drugs. He testified that he was used to drinking as much as he had that day and that he was not drunk until after taking the valium. After ingesting the valium he was, in his words, "well up there" or "pretty high."

Neither of these statements amounts to evidence of a state of mental impairment rendering the defendant incapable of forming the intent to kill. As stated in *Schulz*, "In order to place intoxication in issue in a given case, it will be necessary for the defendant to come forward with some evidence of his impaired condition. This must be more than a mere statement that the defendant was intoxicated." 102 Wis. 2d at 430. The defendant's testimony that he was "high" or "up there" is no more evidence of impairment negating the existence of a specific intent than a statement that he is intoxicated. It is not sufficient to warrant a jury instruction on the issue.

The record evidence of the defendant's mental state prior to and during the commission of the crime all points to a conclusion that the defendant's faculties were not seriously impaired by drugs. The defense did not call any witnesses who might have been able to comment on the defendant's condition on the evening of November 1. The defendant was not arrested until several months after the crime so the arresting officers had no direct knowledge

of the defendant's condition at the time the crime was committed. The only evidence of the defendant's condition came from the defendant's own testimony.

The defendant's account of the events of November 1 provide no support for a voluntary intoxication defense. He was able to describe the crime and events surrounding the crime clearly and in detail. He remembered the names and one of the addresses of the individuals from whom the gun and bullets were obtained. He remembered who carried and loaded the gun and was able to describe its appearance and operation. He was able to formulate or at least understand the device of entering the gas station under the pretense of asking for change. He was lucid enough to conceal the gun in the waistband of his trousers under his shirt.

Once inside the station he was able to carry the preconceived plan into execution. According to his own testimony: "I went in the station, and I handed the attendant five dollars, and he turned around and handed me five singles, and then I asked him for another—a dollar's worth of change, and when he was turning around to give me the change, I shot him once and he fell."[6] He was able to describe Lewandowski's movements in getting the change and when he was shot. He remembered seeing blood on the victim's arm after firing the first shot and then firing three more shots. He remembered the three places in the office where he found money, that the money in the desk was in bands of

---

[6] The dissenting opinion in the court of appeals discounted the evidence of the defendant's condition based on his clear recollection of the incident because much of the examination of the defendant was by leading questions to which the defendant answered with a simple assent or disagreement. This is partly, but as the quoted passage demonstrates, not wholly valid. Moreover, this argument overlooks the fact that the information on which those leading questions were based came from the defendant in the first instance through his statement to the police.

twenty-five ones, and recalled from which of the victim's pockets he took money. Clearly the defendant's account of his actions provides no evidence of impairment sufficient to negate the existence of an intent to kill.

A number of courts from other jurisdictions have upheld denials of intoxication instructions when there was evidence that the defendant was drinking or drunk but no evidence that his ability to think or plan was affected thereby. In *People v. Proper*, 68 Ill. App. 3d 250, 385 N.E.2d 882 (1979), the Appellate Court of Illinois rejected a challenge to the defendant's murder conviction based on the trial court's refusal tc instruct the jury on voluntary intoxication. The court stated that "in order to raise voluntary intoxication as a defense . . . the accused must show that the intoxication was so extreme as to suspend entirely the power of reason." 68 Ill. App. 3d at 254, 358 N.E.2d at 885. (Citations omitted.) In holding that the evidence presented at trial did not come up to that standard, the court said:

"The only evidence supporting an intoxication defense is defendant's own proclamations that he consumed close to a case of beer and 'guessed' that he was drunk. This testimony was contradicted, however, by defendant's prior written statement to the police that he had 12 beers during his entire visit to the Fisher residence. In addition, the transparency of defendant's defense becomes apparent when one considers defendant's coherent and detailed recollection of the events immediately prior to the shooting." 68 Ill. App. 3d at 254, 358 N.E.2d at 885.

In *State v. Payton*, 229 Kan. 106, 622 P.2d 651 (1981), the Supreme Court of Kansas ruled on the trial court's refusal to give a voluntary intoxication instruction. The defendant had testified that he had consumed large quantities of alcohol and was "completely intoxicated." However, his confession and testimony "disclosed [his]

mental capacity was not significantly impaired." 229 Kan. at 113, 622 P.2d at 657. The court stated:

"When conflicting facts are presented on the issue of voluntary intoxication, the question is usually for the jury. . . . In *State v. Wright,* 221 Kan. 132, 138–139, 557 P.2d 1267 (1976), this court reviewed a defendant's evidence of drinking, but stated the '[d]efendant's own testimony negates any possibility that he was intoxicated to the extent that he was incapable of forming an intent to injure.' . . . After examining the record in the instant case, we are satisfied the trial court did not err in refusing to instruct on voluntary intoxication. The evidence did not show the appellant was intoxicated to the extent that his ability to form the requisite intent was impaired." 229 Kan. at 114, 622 P.2d at 657. (Citations omitted.)

In *State v. Bienkowski,* 624 S.W.2d 107 (Mo. App. 1981), the Missouri Court of Appeals upheld a denial of an intoxication instruction in an assault case. In describing the standard for when an instruction is appropriate the court stated: "To support an instruction on this defense, evidence must be presented that tends to show defendant was so intoxicated that he did not know what he was doing." 624 S.W.2d at 108. The court concluded:

"Defendant said he was intoxicated, however, he testified too much. He was able to recount the incident and the story of the night's events. He named five of his companions present, pointed out the progress of the dispute on a map of the restaurant's parking lot, and provided several quotes from the parties involved. His recall belies his intoxication theory. There was no substantial evidence of the severe intoxication required by sec. 562.-076.1(1), hence the trial court properly refused an instruction on that issue. Defendant did not carry his burden of 'injecting the issue.' " 624 S.W.2d at 108.

Finally, in *State v. Goodman,* 298 N.C. 1, 257 S.E.2d 569 (1979), the Supreme Court of North Carolina considered the defendant's challenge to his first-degree mur-

der conviction on the grounds that the trial court had failed to instruct the jury on the defense of voluntary intoxication. The court quoted one of its earlier decisions in which it said that in order to qualify for an instruction on the defense of intoxication, "there must be some evidence tending to show that the defendant's mental processes were so overcome by the excessive use of liquor or other intoxicants that he had temporarily, at least, lost the capacity to think and plan." 298 N.C. at 13, 257 S.E.2d at 578. Although there was evidence that the defendant had been drinking, "[t]here was no evidence which showed that defendant's capacity to think and plan was affected by drunkenness." 298 N.C. at 14, 257 S.E.2d at 579. The trial court's refusal to give the requested instruction was therefore proper.

We conclude that under the facts of this case the trial court properly refused the defendant's request for an instruction on the defense of voluntary intoxication. In reviewing the trial court's refusal to give the requested instruction, we must assume the truthfulness of the defendant's statements regarding the drugs he had taken and their effect on his mind. Giving full credence to the defendant's testimony, we find no evidence of mental impairment due to drug induced intoxication which would negative the existence of an intent to kill. Therefore, the court's refusal to give the requested instruction was proper.

The final question is whether the trial court's refusal to give the requested instruction is properly before this court. The defendant argues that this court should not review the trial court's decision not to instruct the jury on the defense of voluntary intoxication on the grounds that such review is outside this court's constitutional function. The defendant points out that by virtue of the two-tiered appellate system created by constitutional

amendment and action of the legislature in 1977 and 1978, this court serves principally as a law-declaring court rather than an error correcting court. The function of determining whether a just result has been obtained in a particular case is entrusted primarily to the court of appeals. The defendant argues from this that the decision not to give the requested instruction lies outside this court's purview since it is simply a matter of applying well established principles of law.

The defendant is correct in his general description of the function of Wisconsin appellate courts. It is true that this court's principle function is one of "determining on common law principles what the law should be. . . ." (*State ex rel. La Crosse Tribune v. Circuit Court*, 115 Wis. 2d 220, 230, 340 N.W.2d 460 (1983)), and that the cases this court agrees to hear are chosen on that basis. However, it does not follow that this court is precluded thereby from correcting an erroneous application of law in a case over which it has obtained jurisdiction. Once a case is properly before us, it is this court's obligation to resolve the issues presented regardless of the court's original reason for accepting the case.

The trial court's refusal to instruct the jury on the defense of voluntary intoxication is properly raised in this court even though the defendant is seeking review of the court of appeals' holding that the failure to instruct on intoxication is harmless error. In *State v. Alles*, 106 Wis. 2d 368, 391, 316 N.W.2d 378 (1982) this court held: "An appellate court . . . has the power, once an appealable order is within its jurisdiction, to examine all rulings to determine whether they are erroneous and, if corrected, whether they would sustain the judgment or order which was in fact entered." It is not necessary for a respondent to give notice of review or notice of cross-appeal when challenging the rationale but not the result

below. "[W]hen the error complained of, if corrected, would sustain the judgment, order, or portion thereof appealed from, the respondent by common law is entitled to have review of such claimed error by raising the issue in its brief without service of a notice of review or notice of cross-appeal." 106 Wis. 2d at 391. The state raised the question of the propriety of the trial court's refusal to instruct the jury on voluntary intoxication in its brief which is all that is necessary to have the issue properly presented to this court.

*By the Court.*—The decision of the court of appeals is affirmed.