385 S.E.2d 62

**STATE of West Virginia**

v.

**Mary M. HARDWAY.**

No. 18131.

Supreme Court of Appeals of
West Virginia.

June 16, 1989.

2

Theodore R. Dues, Jr., Charleston, for Hardway.

Edward L. Bullman, Asst. Atty. Gen., Charleston, for State.

McHUGH, Justice:

This case is before the Court upon the appeal of Mary M. Hardway. The appellant was convicted of first degree murder in the Circuit Court of Clay County. We have reviewed the petition for appeal, all matters of record, and briefs of the parties. We are of the opinion that this case should be affirmed.

## I.

The appellant's husband, Robert Hardway, died of a gunshot wound in the upper portion of his back on April 27, 1985. A rifle maintained in the Hardway residence was the apparent weapon which caused the victim's death. At the time of the shooting, only the appellant and her husband were known to be in their residence.

The appellant contends that the rifle accidentally discharged after falling from where it rested, leaned against a dresser in the victim's bedroom, where the appellant claims to have seen it shortly before the victim went to bed. The appellant also contends that she was asleep when the victim was shot.

The State contends that during the early morning hours of April 27, 1985, the appellant waited for the victim to fall asleep, then went into the kitchen, put on a pair of latex gloves, took a rifle from the gun cabinet, went into the victim's bedroom, and shot the victim once, as he lay asleep. The State proved at trial that the rifle could not have discharged accidentally, based upon the position of where the appellant claims it rested and the position of the victim's body when the wound was incurred. The State also proved that prints matching the design of the latex gloves were found on the rifle.

The appellant was convicted of first degree murder with a recommendation of mercy in a trial by jury in the Circuit Court of Clay County.

The appellant focuses upon three primary areas of concern: the composition of the jury; the failure of the trial judge to suppress certain statements and information obtained therefrom; and a demonstration by the State on its theory of how the shooting occurred. In regard to the latter area, counsel for the appellant in this appeal states that trial counsel was ineffective because he did not adequately prepare to rebut the State's evidence by obtaining experts. The appellant also asserts that the trial judge erred by not giving instructions on lesser included offenses.

## II. JURY ISSUES

### A. Fingerprint Examiner

The appellant contends that the circuit court committed reversible error by not sustaining her challenge for cause of a potential juror who was previously employed by the Department of Public Safety with a specialty in latent fingerprints.

The potential juror was an employee of the Department of Public Safety seven years prior to the trial of this case and worked six years as a latent fingerprint examiner. During *voir dire*, this potential juror made a statement indicating that she would apply her own standards to the evidence to be introduced at trial. Moreover, the appellant maintains that this potential juror's association with a witness for the Department of Public Safety gave rise to removing her for cause.

On the following day, during *voir dire*, this potential juror was again questioned about her statements of the previous day. She clarified her remarks, stating that she would apply the same standard to the evidence presented, whether it would be presented by a member of the Department of Public Safety or not.

The appellant removed this potential juror from the jury panel by using a peremptory strike.

In syllabus point 5 of *State v. West*, 157 W.Va. 209, 200 S.E.2d 859 (1973), this Court held that "[i]n a criminal case, it is reversible error for a trial court to overrule a challenge for cause of a juror who is an

employee of a prosecutorial or enforcement agency of the State of West Virginia." We also held that "when the defendant can demonstrate even a tenuous relationship between a prospective juror and any prosecutorial or enforcement arm of State government, defendant's challenge for cause should be sustained by the court." *Id.* 157 W.Va. at 219, 200 S.E.2d at 866. Furthermore, "where the trial court is in doubt, the doubt must be resolved in favor of the defendant's challenge[.]" *Id.* 157 W.Va. at 219–20, 200 S.E.2d at 866.

■ Although the appellant assigns as error the inclusion of the former latent fingerprint examiner as a potential juror, it is clear that this assignment of error was not preserved at trial. The following exchange occurred:

THE COURT: And do you still challenge her for cause on the issue of not basing her verdict on the evidence and instead relying on her expertise?

MR. COOPER [defense counsel]: No, sir.

THE COURT: The Court is of the opinion that from its examination, that the prospective juror indicated that she would rely on the testimony.

MR. COOPER: That's how I understood her.

THE COURT: Do you desire to argue the challenge for cause or do you, are you standing on your challenge for cause on that basis?

MR. COOPER: The matter would appear that she has indicated this morning, upon the Court's examination of her in relation to that particular issue, that she wondered if she had not been inarticulate in her answers yesterday and it would appear that she feels that she can objectively judge the testimony, the witnesses, the evidence to be introduced in the case as opposed to total objective examination in her duties as a juror. Based upon the fact that it is a statement by the juror that she can follow the instructions of the Court and she is unbiased and unprejudiced, and I suspect that the defendant would not be in much of a position to go forward with her challenge for cause, as

it was made yesterday evening at that point in the examination of the prospective juror.

THE COURT: Okay.

MR. COOPER: I don't see that we can properly respond on it.

Trial Tr. 140–41.

In syllabus point 17 of *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974), this Court stated:

As a general rule, proceedings of trial courts are presumed to be regular, unless the contrary affirmatively appears upon the record, and errors assigned for the first time in an appellate court will not be regarded in any matter of which the trial court had jurisdiction or which might have been remedied in the trial court if objected to there.

In this case, the appellant's challenge of the former latent fingerprint examiner was withdrawn, and, therefore, not preserved at trial. Consequently, there is no error in this regard.

### B. Relatives

After the trial of this case, the appellant learned that two people who sat on the jury in this case are related to law enforcement personnel. One of the jurors is a first cousin of the husband of the chief office deputy sheriff of Clay County and another juror is an uncle of the prosecutor's secretary. It is the appellant's contention that had she known this information and made a timely challenge for cause, then the circuit court would have had to sustain such a challenge.

In syllabus point 4 of *State v. Beckett,* 172 W.Va. 817, 310 S.E.2d 883 (1983), we held that "[a] potential juror closely related by blood or marriage to either the prosecuting or defense attorneys involved in the case or to any member of their respective staffs or firms should automatically be disqualified."

■ The juror who is a first cousin to the husband of the chief office deputy sheriff is not *per se* disqualified from serving as a juror under our holdings in *Beckett* or *State v. West,* 157 W.Va. 209, 200 S.E.2d

859 (1973). The sheriff's office was not actively involved in the prosecution of this case. *Beckett,* 172 W.Va. at 823, 310 S.E.2d at 888–89. Rather, it was the Department of Public Safety that was actively involved.

With regard to the juror who is an uncle of the prosecutor's secretary in this case, we restate syllabus point 6 of *Beckett,* in which we held:

A prospective juror's consanguineal, marital or social relationship with an employee of a law enforcement agency does not operate as a per se disqualification for cause in a criminal case unless the law enforcement official is actively involved in the prosecution of the case. *After establishing that such a relationship exists, a party has a right to obtain individual voir dire of the challenged juror to determine possible prejudice or bias arising from the relationship.*

(emphasis supplied)

Because this juror's relationship with the prosecutor's secretary was not "established" until after trial, the appellant never had the opportunity to obtain individual *voir dire* based on the establishment of this relationship. However, recently we held that "[w]here there is a recognized statutory or common law basis for disqualification of a juror, a party must during voir dire avail himself of the opportunity to ask such disqualifying questions. Otherwise the party may be deemed not to have exercised reasonable diligence to ascertain the disqualification." Syl. pt. 8, *State v. Bongalis,* 180 W.Va. 584, 378 S.E.2d 449 (1989).

In *Bongalis,* a juror had been convicted of a felony and was disqualified from serving on a jury pursuant to *W.Va.Code,* 52–1–2 [1957]. This fact, however, was not discovered until several months after trial. Counsel was permitted an individual *voir dire,* but failed to ask questions regarding felony convictions of potential jurors.

■ In this case, defense counsel was permitted individual *voir dire.* However, counsel failed to ask questions on *voir dire* which would determine whether any member of the jury panel is closely related to the prosecutor or a member of his staff.[1]

Therefore, under our holding in syllabus point 8 of *Bongalis,* the appellant did not exercise reasonable diligence in ascertaining the possible disqualification and, accordingly, she was not denied a fair trial.[2]

### III.  SUPPRESSION OF STATEMENTS ISSUE

The appellant contends that the circuit court committed error by refusing to suppress two statements that the appellant made to investigating officers on the morning of the shooting.

During the initial investigation of the shooting, two state police officers separately interviewed the appellant. Before these investigatory interviews, the appellant was not advised of warnings pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The first officer talked to the appellant for about five to ten minutes, after the officer looked around the area during the initial investigation.

The second officer's interview lasted around thirty-five minutes. Because of the distractions of the investigation being conducted inside the residence, the second officer asked the appellant to step outside, and to this, the appellant agreed. The officer was uniformed, and the two went out to the police cruiser, which was unmarked, but clearly discernible as a police car.

---

1.  During *voir dire,* the circuit court inquired into the possibility of members of the panel having *immediate* family members involved with law enforcement agencies.

2.  We are not deciding whether a prosecutor's secretary is "closely related" to an uncle who serves as a juror in a criminal case. During *voir dire,* the closeness of the relationship could have been explored. In some instances, for example, blood relatives rarely speak with each other or may not have close family ties. Defense counsel's failure to exercise reasonable diligence in ascertaining whether a relationship existed at all, or if it did, the closeness of that relationship, would make a determination of whether the two are "closely related" premature. Therefore, that question is left for another day.

Both officers repeatedly testified that the appellant was free to go. During the interviews, the appellant: (1) disclosed that she and the victim were the only ones at home during the shooting; and (2) was asked whether the victim had life insurance.

The appellant now maintains that the statements she gave to the police officers and the information obtained therefrom should have been suppressed because she was not advised of her constitutional rights. The appellant claims that because the State attempted to prove greed as a motive for the crime, she was especially prejudiced.

Specifically, *Miranda* held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706. *See State v. Bragg*, 160 W.Va. 455, 459, 235 S.E.2d 466, 469–70 (1977); *see also Rhode Island v. Innis*, 446 U.S. 291, 297, 100 S.Ct. 1682, 1688, 64 L.Ed.2d 297, 305 (1980).

We have held that "[t]he obligation of police to warn a suspect of both his right to counsel and his right against self-incrimination applies only to custodial or other settings where there is a possibility of coercion." Syl. pt. 2, *State v. Andriotto*, 167 W.Va. 501, 280 S.E.2d 131 (1981). *See also State v. Wotring*, 167 W.Va. 104, 112–13, 279 S.E.2d 182, 189 (1981).

The question with regard to this assignment of error is whether the appellant was in custody.

In *Miranda*, the United States Supreme Court stated: "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706.

In a case with a strikingly similar *setting* to the one in this case, this Court stated that

there is no showing that [the police officer] entered the appellant's home with the intention of arresting him or, once inside, exercised any kind of control or influence over the appellant which would lead a reasonable person to believe that he had been taken into custody. All of the evidence indicates that the appellant voluntarily accompanied the officer outside and willingly entered the cruiser to make a statement. In the absence of a showing that the appellant was not free to refuse to accompany [the police officer] or to return to the sanctity of his home once outside, there is no evidence of an illegal detention sufficient to vitiate the subsequent inculpatory statements.

*State v. Dyer*, 177 W.Va. 567, 571, 355 S.E.2d 356, 360 (1987). In *Dyer*, the appellant asserted that his inculpatory statements were obtained pursuant to an illegal arrest, and violative of the fourth amendment.

Similarly, in *State v. Gum*, 172 W.Va. 534, 309 S.E.2d 32 (1983), the appellant was not suspected of committing first degree murder until thirteen months after his victim's death. At the time of the murder, the appellant was questioned as part of a preliminary investigation, and was not given *Miranda* warnings. On appeal after conviction, the appellant contended that his statements during the preliminary investigation should have been suppressed. In rejecting this contention, we stated that "[t]he *informal questioning* which took place in this case *as part of the preliminary investigation* of the victim's death *did not take place in a custodial or coercive setting.* Therefore, there was no duty to give the appellant his Miranda warnings, and the information elicited was admissible at trial." *Id.* 172 W.Va. at 541, 309 S.E.2d at 39 (emphasis supplied).

█ In this case, the appellant was not deprived of her freedom in any significant way. The interviews conducted by the police officers were merely part of the preliminary investigation of the victim's death. There is nothing in the record to suggest

that the appellant was not free to go.[3] Consequently, the setting in which these interviews took place was not custodial or coercive, and the statements obtained were the product of the appellant's voluntariness. Therefore, there was no duty on the police officers to give the appellant *Miranda* warnings.[4]

"A trial court's decision regarding the voluntariness of a confession will not be disturbed unless it is plainly wrong or clearly against the weight of the evidence." Syl. pt. 3, *State v. Vance*, 162 W.Va. 467, 250 S.E.2d 146 (1978). *See also* syl. pt. 4, *State v. Cheshire*, 173 W.Va. 123, 313 S.E.2d 61 (1984).

The circuit court's decision in this case, that the statements should not be suppressed because the appellant was not in custody, is not against the weight of the evidence. Therefore, we defer to the circuit court's discretion in this matter and find that no error was committed.

## IV. DEMONSTRATION ISSUE

The appellant contends that the circuit court erred by allowing the State to re-create conditions of the shooting and conduct an experiment or demonstration during trial.

The demonstration attempted to prove that it would have been physically impossible for the victim to have been shot in the way that the appellant claims that he accidentally was. This re-creation of the scene of the shooting demonstrated the physical position of the furnishings present at the time, using photographs, a video tape, and measurements taken by the investigating officers. The re-creation reconstructed the height of the bed on which the victim laid when he was shot as well as the height of the bullet hole in the wall. The demonstration used the actual dresser upon which the rifle allegedly rested and indicated that for the bullet to have entered and exited the victim's body in the way it actually did, the rifle would have had to have been held off the floor. The appellant maintains that by allowing the State to conduct such a demonstration, the circuit court committed error. We do not agree.

It is ordinarily within the discretion of the trial court to permit or to refuse to permit experiments or demonstrations to be conducted before the jury, either in or out of the court room, and such discretion will not be interfered with unless it is apparent that it has been abused.

Syl. pt. 5, *State v. Taft*, 144 W.Va. 704, 110 S.E.2d 727 (1959).

Other jurisdictions have permitted the State, in its prosecution, to re-create homicide scenes by arranging articles of furniture in substantially the same positions as they were at the time of the alleged crime. These jurisdictions defer to the discretion of the trial court in deciding whether such recreations are permitted in the presence of a jury. *People v. Proper*, 68 Ill.App.3d 250, 255, 24 Ill.Dec. 741, 745, 385 N.E.2d 882, 886 (1979); *Hughes v. State*, 126 Tenn. 40, 71–74, 148 S.W. 543, 551 (1912); *State v. Winters*, 102 Vt. 36, 47–48, 145 A. 413, 417–18 (1929). *See* 22A C.J.S. *Criminal Law* § 709, at 952 (1961).

Generally, the admissibility of demonstrative evidence is a matter within the discretion of the trial court. *McCormick on Evidence* § 212, at 668–69 (E. Cleary 3d ed.1984); 22A C.J.S. *Criminal Law* § 708, at 944 (1961); 29 Am.Jur.2d *Evidence* § 769, at 838 (1967).

---

**3.** The appellant was not even indicted or arrested until nearly three months after the victim's death.

**4.** The statements that the officers took from the appellant were not even admitted into evidence, and this, the appellant concedes, although the officers were allowed to testify about their interviews with the appellant. At the suppression hearing, one of the officers testified that, to his recollection, when he asked the appellant if the victim had life insurance, she said that he did not. There is no trial testimony, however, that deals with this part of the officer's interview with the appellant. Even in the *appellant's own testimony* at trial, she stated that she told the officer, when questioned, that she did not know whether the victim had insurance. The critical testimony regarding insurance in relation to what the appellant stood to gain financially was introduced by the State through representatives of the company where the victim was employed, who were familiar with the company's insurance plan.

■ It is not error for a trial court, in a homicide case, to allow the State to conduct a demonstration in the presence of the jury which re-creates the scene of the homicide by arranging articles in substantially the same position as they were at the time of the homicide, if the demonstration allows the jury to more intelligently consider the State's theory of the case or to rebut the defendant's theory of the case and if the probative value of such demonstration is not substantially outweighed by the danger of unfair prejudice. *See generally Spurlin v. Nardo,* 145 W.Va. 408, 419, 114 S.E.2d 913, 920 (1960); F. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 6.7 (2d ed.1986). *Cf.* syl. pt. 3, *State v. Newman,* 101 W.Va. 356, 132 S.E. 728 (1926) (experiment offered must be performed under substantially similar conditions); *W.Va.R.Evid.* 403.

In this case, the State's demonstration allowed the jury to more intelligently consider the State's allegation that the gun did not discharge accidentally and the probative value of the demonstration substantially outweighed any danger of unfair prejudice that may have existed.

The record does not indicate any abuse of discretion on the part of the trial court by allowing the State to conduct the demonstration that it did, and the conditions of the State's demonstration were substantially similar to those in the victim's bedroom at the time he was fatally wounded.

Accordingly, the circuit court did not err by allowing the State to re-create conditions of the shooting during the trial of this case.

Related to this issue, the appellant contends that she was denied effective assistance of counsel, in violation of the sixth amendment to the *United States Constitution* and in violation of *W.Va. Const.* art. III, § 14.[5]

Specifically, the appellant maintains that defense counsel's failure to obtain independent scientific testing to prepare for the confrontation of comparable evidence which the State indicated it would use amounted to an ineffective assistance of counsel.[6]

The State's case consisted primarily of circumstantial evidence. Scientific tests were key to the State's case. The State conducted blood tests on clothing worn by the appellant on the day of the shooting and sheets from the victim's bed. The State also conducted tests on fiber obtained from the scene, ballistics tests, projectory calculations, and the demonstration in court to which we have alluded.

We have consistently held that "[w]here a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused." Syl. pt. 21, *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974). *See also State v. Glover,* 177 W.Va. 650, 653, 355 S.E.2d 631, 634 (1987) (collecting cases at n. 4); *State v. Tadder,* 173 W.Va. 187, 313 S.E.2d 667 (1984); syl. pt. 3, *State v. Bogard,* 173 W.Va. 118, 312 S.E.2d 782 (1984); syl. pt. 2, *State v. Bias,* 171 W.Va. 687, 301 S.E.2d 776 (1983); syl. pt. 3, *State v. Baker,* 169 W.Va. 357, 287 S.E.2d 497 (1982); *Watson v. Black,* 161 W.Va. 46, 239 S.E.2d 664 (1977).

■ The appellant claims that defense counsel's failure to retain experts to rebut the State's case is not a strategy or tactic, but a decision involving prudence and effectiveness. However, the appellant fails to meet the proper standard of proof in asserting such a claim. "One who charges on appeal that his trial counsel was ineffective and that such resulted in his conviction, must prove the allegation by a preponderance of the evidence." Syl. pt. 22, *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445

---

**5.** The sixth amendment to the *United States Constitution* provides, in part: "In all criminal prosecutions, the accused shall ... have the Assistance of Counsel for his defence." The corresponding provision in the State *Constitution* is art. III, § 14.

**6.** Counsel for the appellant in this appeal was not trial counsel.

(1974). The record in this case is devoid of facts which would indicate the value of retaining experts for the appellant. There is no showing as to how they would have rebutted the State's case.

Therefore, the appellant's contention that she was denied effective assistance of counsel is clearly without merit.

## V. JURY INSTRUCTION ISSUE

Finally, the appellant contends that the circuit court erred by refusing to instruct the jury on lesser included offenses of first degree murder. This contention is without merit.

■ The appellant correctly points out that the duty to instruct the jury in accordance with constitutional requirements is on the trial court. Syl. pt. 2, *State v. Dozier*, 163 W.Va. 192, 255 S.E.2d 552 (1979). In syllabus point 2 of *State v. Neider*, 170 W.Va. 662, 295 S.E.2d 902 (1982), we held that "[w]here there is no evidentiary dispute or insufficiency on the elements of the greater offense which are different from the elements of the lesser included offense, then the defendant is not. entitled to a lesser included offense instruction." *Accord*, syl. pt. 4, *State v. Mullins*, 181 W.Va. 415, 383 S.E.2d 47 (1989).

■ However, in this case, the appellant maintained at trial that the fatal shooting of her husband was the result of the accidental discharge of a shotgun, *without* her involvement. The State, on the other hand, contends that it was first degree murder.

Consequently, the appellant was not entitled to a lesser included offense instruction and the circuit court did not err by refusing to give one.

For the foregoing reasons, the final judgment of the Circuit Court of Clay County is affirmed.

Affirmed.

McGRAW, J., participated and concurred in this decision but departed from the Court prior to the preparation of the opinion.

WORKMAN, J., did not participate in the consideration or decision of this case.