# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**January 2022 Term**

_____

No. 20-0099

_____

**FILED**
**January 28, 2022**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA,**
**Plaintiff Below, Respondent**

**V.**

**JOHN THOMAS CAMPBELL,**
**Defendant Below, Petitioner**

_____

**Appeal from the Circuit Court of Greenbrier County**
**The Honorable Robert E. Richardson, Judge**
**Criminal Action No. 12-F-34**

**AFFIRMED**

_____

**Submitted: January 4, 2022**
**Filed: January 28, 2022**


Eric M. Francis
Lewisburg, West Virginia
Attorney for the Petitioner

Patrick Morrisey, Attorney General
Scott E. Johnson,
Assistant Attorney General
Charleston, West Virginia
Attorneys for the Respondent


**JUSTICE JENKINS delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1. "'The obligation of police to warn a suspect of both his right to counsel and his right against self-incrimination applies only to custodial or other settings where there is a possibility of coercion.' Syl. pt. 2, *State v. Andriotto*, 167 W. Va. 501, 280 S.E.2d 131 (1981)." Syllabus point 5, *State v. Hardway*, 182 W. Va. 1, 385 S.E.2d 62 (1989).

2. "'The factors to be considered by the trial court in making a determination of whether a custodial interrogation environment exists, while not all-inclusive, include: the location and length of questioning; the nature of the questioning as it relates to the suspected offense; the number of police officers present; the use or absence of force or physical restraint by the police officers; the suspect's verbal and nonverbal responses to the police officers; and the length of time between the questioning and formal arrest.' Syllabus Point 2, *State v. Middleton*, 220 W. Va. 89, 640 S.E.2d 152 (2006)[, *overruled on other grounds by State v. Eilola*, 226 W. Va. 698, 704 S.E.2d 698 (2010)]." Syllabus point 4, *Damron v. Haines*, 223 W. Va. 135, 672 S.E.2d 271 (2008).

3. "We adopt the 'Massachusetts' or 'humane' rule whereby the jury can consider the voluntariness of the confession, and we approve of an instruction telling the

i

jury to disregard the confession unless it finds that the State has proved by a preponderance of the evidence it was made voluntarily." Syllabus point 4, *State v. Vance*, 162 W. Va. 467, 250 S.E.2d 146 (1978).

4.     "It is not reversible error to refuse to give instructions offered by a party that are adequately covered by other instructions given by the court." Syllabus point 20, *State v. Hamric*, 151 W. Va. 1, 151 S.E.2d 252 (1966).

**Jenkins, Justice:**

This is a direct appeal by Petitioner, Mr. John Thomas Campbell ("Mr. Campbell"), of an order entered by the Circuit Court of Greenbrier County on January 24, 2020, that re-sentenced him, for purposes of appeal, to an indeterminate term of not less than ten nor more than twenty years for his conviction of one count of the felony offense of Sexual Abuse by a Parent, Guardian, Custodian, or Person in a Position of Trust to a Child, in violation of West Virginia Code section 61-8D-5 (eff. 2010). In this appeal, Mr. Campbell raises four issues. First, he argues that the circuit court erred by failing to suppress his recorded confession. Next, he claims the circuit court further erred by failing to give two jury instructions he proposed. Mr. Campbell also alleges that his trial counsel was ineffective, and he asserts cumulative error. We have considered the parties' briefs and oral arguments, the appendix record submitted, and the relevant statutes and legal precedent, and we find no error with respect to the first two issues raised by Mr. Campbell. We decline to address his claim of ineffective assistance of counsel in a direct appeal. Finally, because we find no error, we reject his claim of cumulative error. Accordingly, we affirm the circuit court's order of January 24, 2020.

1

**FACTUAL AND PROCEDURAL HISTORY**

In November 2011, a seventeen-year-old juvenile resident of Davis-Stuart School ("Davis-Stuart" or "School")[1] disclosed to a School employee that she had engaged in consensual sexual intercourse with Mr. Campbell, who was employed by Davis-Stuart as a childcare worker. The incident, which also occurred in November 2011, took place on school premises while Mr. Campbell was working his shift as a childcare worker and was responsible for the care and safety of his victim as well as other student residents of the cottage to which he was assigned. Mr. Campbell was twenty-six years old at the time.

The incident was reported to law enforcement officials, and Corporal Roger Baker ("Corporal Baker") of the Greenbrier County Sheriff's Department was assigned to investigate. As described more fully below, Corporal Baker approached Mr. Campbell at Davis-Stuart on November 29, 2011, and asked Mr. Campbell to accompany him to the Lewisburg Police Department to discuss "some issues." Mr. Campbell agreed to go, was

---

[1] The parties do not explain what Davis-Stuart School is. The indictment describes the school as "a therapeutic residential center for adolescents." According to the trial testimony of the School's executive director, it is a residential treatment home for youth aged twelve to eighteen who have suffered abuse and neglect and have been removed from their homes. The students may reside at the School until permanency is established by either returning to their home or being placed in a foster or adoptive home.

interviewed by Corporal Baker, and admitted to engaging in consensual sexual intercourse with the student victim. A video recording was made of the interview.

On February 8, 2012, Mr. Campbell was indicted for a single count of the felony offense of Sexual Abuse by a Parent, Guardian, Custodian, or Person in a Position of Trust to a Child, in violation of West Virginia Code section 61-8D-5.[2] After numerous delays that are not relevant to this appeal, trial was set for May 21, 2013.[3] Prior to trial,

---

[2] Under the relevant provision of West Virginia Code section 61-8D-5 (eff. 2010):

> (a) In addition to any other offenses set forth in this code, the Legislature hereby declares a separate and distinct offense under this subsection, as follows: If any parent, guardian or custodian of or other person in a position of trust in relation to a child under his or her care, custody or control, shall engage in or attempt to engage in sexual exploitation of, or in sexual intercourse, sexual intrusion or sexual contact with, a child under his or her care, custody or control, notwithstanding the fact that the child may have willingly participated in such conduct, or the fact that the child may have consented to such conduct or the fact that the child may have suffered no apparent physical injury or mental or emotional injury as a result of such conduct, then such parent, guardian, custodian or person in a position of trust shall be guilty of a felony and, upon conviction thereof, shall be imprisoned in a correctional facility not less than ten nor more than twenty years, or fined not less than $500 nor more than $5,000 and imprisoned in a correctional facility not less than ten years nor more than twenty years.

[3] The judge who presided over Mr. Campbell's trial and the subsequent sentencing hearings was the Honorable James J. Rowe.

the circuit court conducted an evidentiary hearing to determine the admissibility of Mr. Campbell's recorded interview, which included his confession. The circuit court determined that the interview was admissible, and the recording was played for the jury during Mr. Campbell's two-day trial. The jury found Mr. Campbell guilty of the offense as charged.

At Mr. Campbell's sentencing hearing on October 18, 2013, the circuit court denied Mr. Campbell's request for an alternative sentence and imposed an indeterminate term of incarceration of not less than ten nor more than twenty years. However, after hearing Mr. Campbell's motion for reconsideration of sentence on March 14, 2014, the circuit court suspended his sentence and imposed an alternative sentence of probation.[4] Thereafter, Mr. Campbell violated the conditions of his probation,[5] and, as a result, his probation was revoked and his sentence reinstated. On February 18, 2018, Mr. Campbell, as a self-represented litigant, filed a petition for writ of habeas corpus in the circuit court

---

[4] The alternative sentence was a tiered probation under an intensive supervision program for a minimum of twenty years. Mr. Campbell was also required to complete 1,000 hours of community service.

[5] Mr. Campbell violated the conditions of his probation by residing on property where children were present.

claiming, in part, that his trial counsel[6] had failed to perfect an appeal on his behalf.[7] Counsel was appointed, and Mr. Campbell was re-sentenced on January 24, 2020, for purposes of allowing him to appeal his conviction. This timely appeal followed. Additional relevant facts are included in our discussion of the issues to which they pertain.

## II.

## STANDARD OF REVIEW

The standard for our review is different for each of the three issues considered below. Therefore, the standard for our review of each issue is set out below in our discussion of the issue to which it pertains.

## III.

## DISCUSSION

Mr. Campbell raises four assignments of error; however, only three need be addressed.[8] In these three assignments, Mr. Campbell asserts that the circuit court erred

---

[6] Mr. Campbell's trial counsel was E. Lavoyd Morgan, Jr.

[7] The Honorable Robert E. Richardson presided over Mr. Campbell's petition for writ of habeas corpus.

[8] Mr. Campbell's fourth assignment of error raises cumulative error; however, as explained in the body of this opinion, we find no error committed in the circuit court. Accordingly, we summarily reject Mr. Campbell's claim of cumulative error.

by failing to suppress his recorded interview of November 29, 2011; the circuit court further erred by failing to give two jury instructions he requested; and his trial counsel was ineffective. We consider these issues in turn.

## A. Suppression of Interview

Mr. Campbell first argues that the circuit court erred by failing to suppress his recorded interview of November 29, 2011. His argument on this issue is quite convoluted, and, as the State aptly points out, it is not clear whether he is attempting to argue that his interview should have been suppressed based upon an alleged violation of his Fifth Amendment right against self-incrimination[9] as set forth in *Miranda v. Arizona*,[10] which also implicates article III, § 5 of the West Virginia Constitution,[11] or on the basis that his confession was not voluntary and therefore violated his rights under the Due Process Clause of the Fourteenth Amendment and § 10 of article III of the West Virginia Constitution.[12] In this regard, it has been recognized that "'[t]he question of the

---

[9] According to the Fifth Amendment, "No person . . . shall be compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V.

[10] *See Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[11] Pursuant to Article III, § 5 of the West Virginia Constitution, "nor shall any person, in any criminal case, be compelled to be a witness against himself[.]"

[12] According to the Due Process Clause of the Fourteenth Amendment, "No State shall . . . deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV. Similarly, the West Virginia Constitution provides that

voluntariness of a waiver of *Miranda* rights is separate and differs from the determination of the voluntariness of a confession.'" *State v. Bradshaw*, 193 W. Va. 519, 534, 457 S.E.2d 456, 471 (1995) (quoting *Smith v. Duckworth*, 856 F.2d 909, 911 (7th Cir. 1988)). Therefore, after setting out some relevant facts and the proper standard for our review, we will discuss Mr. Campbell's assertions under each standard.

The facts relevant to this assignment of error are that, following the female student's disclosure of her consensual sexual intercourse with Mr. Campbell, Mr. Campbell was approached on November 29, 2011, at Davis-Stuart, by Corporal Baker. Corporal Baker asked Mr. Campbell if he would ride to a law enforcement office to discuss some issues. Mr. Campbell voluntarily rode in the front seat of Corporal Baker's unmarked police vehicle to the Lewisburg Police Department. Once at the police department, Mr. Campbell was taken into a small, windowless interrogation room in the basement and seated beside a desk that was against the wall at the back of the room. Corporal Baker sat between Mr. Campbell and the door to the room, but the door remained unlocked. At one point, Mr. Campbell was momentarily left alone in the unlocked room. While there, Mr. Campbell participated in an interview that lasted approximately forty-five minutes and was recorded. According to a transcript of the recording, Mr. Campbell was not provided with

---

"No person shall be deprived of life, liberty, or property, without due process of law[.]" W. Va. Const. art. III, § 10.

a *Miranda* warning; however, Corporal Baker advised Mr. Campbell that he was free to leave at any time:

> CORPORAL BAKER: John Thomas Campbell. Okay. You come in voluntarily, correct? I mean, I didn't drag you in a headlock --
>
> MR. CAMPBELL: No.
>
> CORPORAL BAKER: -- and say, "Come in here." You know, you're free to leave any time. You're not -- you're not going to -- you know, we -- with -- you know, it's -- you're willing to talk to me, you know. You know you can leave. I'm not going to put you into a headlock and make you stay here or anything like that.
>
> MR. CAMPBELL: Uh-huh.

A second time during the interview, Corporal Baker repeated that Mr. Campbell could leave any time:

> CORPORAL BAKER: Sorry about that, John (inaudible). John, just real quick. We'll do it real quick. You're in here -- you're here voluntarily; you know you can leave at any time, right?
>
> MR. CAMPBELL: Yeah.
>
> CORPORAL BAKER: Okay. Just want to make sure we -- we understand that. I don't want anybody to think I have got you in here in a headlock, so the door is unlocked . . . .
>
> MR. CAMPBELL: All right.

Thereafter, Mr. Campbell admitted that on one occasion in November 2011 he engaged in consensual sexual intercourse with the female resident of Davis-Stuart who was under his supervision.

8

Prior to trial, the State filed a motion under Rule 104 of the West Virginia Rules of Evidence[13] asking the circuit court to hold an evidentiary hearing to determine the admissibility of Mr. Campbell's interview, which included his confession.[14] Mr. Campbell then filed a motion to suppress the interview, arguing that he had been subjected to a custodial interrogation in violation of his rights as outlined in *Miranda v. Arizona*.[15]

---

[13] This rule states, in relevant part, that

> (a) *In general.* — The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege.
>
> (b) *Relevance that depends on a fact.* — When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. The court may admit the proposed evidence on the condition that the proof be introduced later.

W. Va. R. Evid. 104.

[14] This Court has held that

> "'The State must prove, at least by a preponderance of the evidence, that confessions or statements of an accused which amount to admissions of all or a part of an offense were voluntary before such may be admitted into the evidence of a criminal case.' Syl. pt. 5, *State v. Starr*, [158] W. Va. [905], 216 S.E.2d 242 (1975)." Syl. Pt. 1, *State v. Vance*, 162 W. Va. 467, 250 S.E.2d 146 (1978).

Syl. pt. 1, *State v. Wilson*, 190 W. Va. 583, 439 S.E.2d 448 (1993) (per curiam).

[15] We note that, in his motion to suppress, Mr. Campbell's counsel acknowledged that there are two standards to determine the admissibility of a defendant's statement. One applies in non-custodial situations and requires that the totality of the

9

The circuit court held a hearing on the admissibility of the statements. Corporal Baker testified on behalf of the State and was the only witness at the hearing. According to Corporal Baker's unrefuted testimony, the interview lasted roughly forty-five minutes; the door to the interview room was unlocked; Mr. Campbell was never placed in hand cuffs or arrested; and, after the interview, Corporal Baker transported Mr. Campbell back to Davis-Stuart. Corporal Baker further testified that he did not threaten, coerce, or make any promises to Mr. Campbell. Mr. Campbell offered no evidence or witnesses at the hearing. Based on the evidence presented, the circuit court found Mr. Campbell's statements were admissible:

> THE COURT:      Well, the Court can only go on the evidence that's adduced at this hearing, and the evidence is that he [Mr. Campbell] was picked up. He was approached while at work, and he [was] asked if he would come and talk with him [Corporal Baker].

---

circumstances demonstrates that the statement was voluntary. *See* Syl. pt. 7, *State v. Farley*, 192 W. Va. 247, 452 S.E.2d 50 (1994) ("Representations or promises made to a defendant by one in authority do not necessarily invalidate a subsequent confession. In determining the voluntariness of a confession, the trial court must assess the totality of all the surrounding circumstances. No one factor is determinative. To the extent that *State v. Parsons*, 108 W. Va. 705, 152 S.E. 745 (1930), is inconsistent with this standard, it is overruled."). The second applies in custodial circumstances, and requires that the defendant be advised of his rights pursuant to *Miranda v. Arizona*. *See State v. George*, 185 W. Va. 539, 545, 408 S.E.2d 291, 297 (1991) ("*Miranda* warnings are required only when a suspect has either been formally arrested *or* subjected to custodial interrogation." (quotations and citation omitted)). Although the existence of two standards was acknowledged in the motion, the only argument set out therein was the contention that there was a custodial interrogation and a violation of Mr. Campbell's *Miranda* rights.

10

He rode in the front seat, probably five or six miles from Davis Stewart [sic] to the Lewisburg Police Department, was taken into a room, which I guess is the interrogation room. It's a small room it appears. There's no window. There is a door there.

He was seated off to the [--] kind of catty-cornered, at the corner of the desk, and that interview took place 45 minutes, and I would have to, I guess conceivably those circumstances could amount to a custodial-type situation of coercive-type interrogation, but there's been no testimony as to his level of sophistication, his intelligence, his demeanor, the impact it had on him or any of that.

For me to conclude that what it -- it was custodial or he was coerced, I can't based on the testimony so the preponderance at this point is that it was not custodial. A preponderance is that it was voluntarily given at this point, and so it may be admitted into evidence at trial.

We apply an abuse of discretion standard of review to a circuit court's decision on the admissibility of a confession. "It is a well-established rule of appellate review in this state that a trial court has wide discretion in regard to the admissibility of confessions and ordinarily this discretion will not be disturbed on review." Syl. pt. 2, *State v. Vance*, 162 W. Va. 467, 250 S.E.2d 146 (1978). Moreover, "A trial court's decision regarding the voluntariness of a confession will not be disturbed unless it is plainly wrong or clearly against the weight of the evidence." Syl. pt. 3, *Id.* However,

This Court is constitutionally obligated to give plenary, independent, and *de novo* review to the ultimate question of whether a particular confession is voluntary and whether the lower court applied the correct legal standard in making its determination. The holdings of prior West Virginia cases

suggesting deference in this area continue, but that deference is limited to factual findings as opposed to legal conclusions.

Syl. pt. 2, *State v. Farley*, 192 W. Va. 247, 452 S.E.2d 50 (1994). With these standards in mind, we address whether the circuit court erred in admitting Mr. Campbell's recorded confession.

**1. Whether Mr. Campbell was in custody such that his right to *Miranda* warnings had attached.** In an argument that seems to focus primarily on the voluntariness of Mr. Campbell's statement under the totality of the circumstances, Mr. Campbell confoundingly argues that he was never read his *Miranda* warning, and, therefore, his statement cannot be voluntary.[16] The State contends that Mr. Campbell was not in custody when he was interviewed by Corporal Baker; therefore, Corporal Baker had no obligation to secure a waiver of *Miranda* rights from Mr. Campbell. We agree with the State.

---

[16] In a footnote in his appellate brief, counsel for Mr. Campbell states that "Out of an abundance of caution, current counsel wishes to include arguments found in the Motion to Suppress the Defendant's Statement found on pages 538 – 543 in the appendix." The pages noted refer to the motion to suppress filed on behalf of Mr. Campbell before trial, in which trial counsel argued that Mr. Campbell was subjected to a custodial interrogation without being advised of his *Miranda* rights. We caution counsel that this reference in his appellate brief does not comport with Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, under which "The brief must contain an argument exhibiting clearly the points of fact and the law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error."

It is well established that *Miranda* rights apply only to custodial interrogations. As this Court has previously held, "'The obligation of police to warn a suspect of both his right to counsel and his right against self-incrimination applies only to custodial or other settings where there is a possibility of coercion.' Syl. pt. 2, *State v. Andriotto*, 167 W. Va. 501, 280 S.E.2d 131 (1981)." Syl. pt. 5, *State v. Hardway*, 182 W. Va. 1, 385 S.E.2d 62 (1989). *See also State ex rel. DeChristopher v. Gaujot*, 244 W. Va. 631, ___, 856 S.E.2d 223, 232 (2021) ("[A] police officer's obligation to administer [*Miranda*] warnings is triggered only during custodial interrogation."); *State ex rel. Wade v. Hummel*, 243 W. Va. 408, 410 n.3, 844 S.E.2d 443, 445 n.3 (2020) ("The requirement for advising an individual of his/her *Miranda* rights arises only in the context of a custodial interrogation."); *State v. George*, 185 W. Va. 539, 545, 408 S.E.2d 291, 297 (1991) ("It is clear that in this jurisdiction *Miranda* warnings are required only when a suspect has either been formally arrested *or* subjected to custodial interrogation." (quotations and citation omitted)).

In addressing the question of whether an individual was subjected to a custodial interrogation, this Court has applied an objective test:

> Whether the individual was "in custody" is determined by an objective test and asking whether, viewing the totality of the circumstances, a reasonable person in that individual's position would have considered his freedom of action restricted to the degree associated with a formal arrest. [*State v. Potter*,] 197 W. Va. [734,] 744, 478 S.E.2d [742,] 752 [(1996)]; *see also Thompson v. Keohane*, 516 U.S. 99, 113-14

13

n.13, 116 S. Ct. 457, 133 L. Ed. 2d 383 (1995); *State v. Honaker*, 193 W. Va. 51, 60-61, 454 S.E.2d 96, 105-06 (1994) (utilizing "objective circumstances" test to determine whether the defendant was in custody). In *State v. Bradshaw*, 193 W. Va. 519, 457 S.E.2d 456 (1995), this Court explained that "[t]he 'inherent compulsion' that is brought about by the *combination* of custody and interrogation is crucial for the attachment of *Miranda* rights." 193 W. Va. at 530, 457 S.E.2d at 467 (citation omitted).

*State v. McCracken*, 218 W. Va. 190, 195, 624 S.E.2d 537, 542 (2005) (per curiam). We

also have acknowledged that

"The factors to be considered by the trial court in making a determination of whether a custodial interrogation environment exists, while not all-inclusive, include: the location and length of questioning; the nature of the questioning as it relates to the suspected offense; the number of police officers present; the use or absence of force or physical restraint by the police officers; the suspect's verbal and nonverbal responses to the police officers; and the length of time between the questioning and formal arrest." Syllabus Point 2, *State v. Middleton*, 220 W. Va. 89, 640 S.E.2d 152 (2006)[, *overruled on other grounds by State v. Eilola*, 226 W. Va. 698, 704 S.E.2d 698 (2010)].

Syl. pt. 4, *Damron v. Haines*, 223 W. Va. 135, 672 S.E.2d 271 (2008).

Our review of the record in light of the foregoing standards leads us to conclude that Mr. Campbell's interview was not a custodial interrogation. In this instance, the location of the interview, a police station, does not suggest that Mr. Campbell was in custody, particularly because the undisputed evidence is that Mr. Campbell voluntarily accompanied Corporal Baker to the station. "[T]he fact that an interview takes place at a

14

police station . . . does not necessarily render it a custodial interview. Indeed, interviews conducted at police stations have been held to be non-custodial when the defendants have volunteered to meet or accompany officers there." *Montoya v. United States*, No. 1:09CR247, 2013 WL 633586, at *8 (E.D. Va. Feb. 19, 2013).

Furthermore, although Mr. Campbell was taken into a small room and seated at a desk with Corporal Baker situated between Mr. Campbell and the door, it appears that Corporal Baker was the only officer conducting the interview, the door to the room remained unlocked throughout the interview, Mr. Campbell was not handcuffed or restrained in any way, he was at one point left alone in the room, and he was repeatedly advised that he was free to leave. This Court has previously observed that "Telling a suspect that he/she is not under arrest and is free to leave usually is sufficient to prevent a finding of custody and will circumvent a finding of *de facto* arrest." *State v. Farley*, 192 W. Va. at 255 n.10, 452 S.E.2d at 58 n.10. *See also State ex rel. Wade v. Hummel*, 243 W. Va. 408, 411 n.3, 844 S.E.2d 443, 446 n.3 ("To the extent that H.D. was not under arrest and was free to leave, it was not necessary for law enforcement officers to advise him of his rights."). Mr. Campbell was also told that he would be returned to his vehicle at Davis-Stuart following the interview. Once the interview concluded, Mr. Campbell was, in fact, returned to his vehicle. He was not placed under arrest. Instead, Corporal Baker advised Mr. Campbell that "I'm going to talk to the prosecutor and see -- and see where we need to go with it. I'm not -- I'm not going to make any promises. I can't do that." Mr.

15

Campbell was not indicted until February 8, 2012. Additionally, during the suppression hearing, Corporal Baker testified to his belief that Mr. Campbell had a cell phone that he could have used to call someone if he desired to leave the police station. Finally, at no point during the interview, which lasted approximately forty-five minutes, did Mr. Campbell express any desire to leave, and at no point was he prevented from leaving the station.

Other courts have found a defendant was not in custody under circumstances similar to what occurred in this case. *See, e.g.*, *California v. Beheler*, 463 U.S. 1121, 103 S. Ct. 3517, 77 L. Ed. 2d 1275 (1983) (defendant who had been identified as a suspect, voluntarily accompanied police to station house, interviewed less than thirty minutes, and permitted to return to his home was not in custody); *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S. Ct. 711, 714, 50 L. Ed. 2d 714 (1977) ("[T]here is no indication that the questioning took place in a context where respondent's freedom to depart was restricted in any way. He came voluntarily to the police station, where he was immediately informed that he was not under arrest. At the close of a ½-hour interview respondent did in fact leave the police station without hindrance. It is clear from these facts that Mathiason was not in custody or otherwise deprived of his freedom of action in any significant way." (quotations omitted)); *United States v. Uzenski*, 434 F.3d 690, (4th Cir. 2006) (interrogation was not custodial where defendant was told he was not under arrest, he was allowed to leave the interrogation room to use the restroom, the door was left partially open at times,

16

defendant was not forcefully restrained, and the agents did not use a threatening tone towards the defendant or brandish weapons); *Davis v. Allsbrooks*, 778 F.2d 168, 171 (4th Cir. 1985) (defendant was not in custody where he voluntarily rode with detectives to police station, and commenting that a two-hour session of questioning "was not a marathon session designed to force a confession"). *See also United States v. Budd*, 549 F.3d 1140, (7th Cir. 2008) (defendant was not in custody and *Miranda* warnings were not required for series of three interviews at a police station where defendant was told the interviews were voluntary and he could leave at any time, he voluntarily rode to police station in front seat of detective's unmarked vehicle, he was not placed in handcuffs, the two interviewing officers did not raise their voices, and there was no display of force by the officers); *McCown v. Callahan*, 726 F.2d 1 (1st Cir. 1984) (defendant was not in custody when he was questioned because he went to station voluntarily, was told he was not under arrest, and left the station undisturbed).

Despite the foregoing authority, Mr. Campbell's primary argument appears to be that the circuit court failed to engage in a meaningful discussion of Mr. Campbell's mental capacity, or lack thereof, presumably in the context of his ability to waive his *Miranda* rights knowingly and intelligently. However, Mr. Campbell's mental capacity was never raised to the circuit court, and the court observed the lack of evidence in that regard when rendering its ruling on the admissibility of the interview. Moreover, as the State rightly notes, "In the absence of the right to the warnings detailing one's rights under

*Miranda*, the Petitioner's ability to intelligently and knowingly waive those rights is of no moment." Since Mr. Campbell was never in custody, there was no need for him to waive his *Miranda* rights, or demonstrate the absence of an ability to do so. *See, e.g.*, *Commonwealth v. Walton*, No. CP46CR000046592015, 2016 WL 3014810, at *5 (Pa. Ct. Com. Pl. Jan. 22, 2016) ("Because [defendant] was not in custody, the police were not obligated to administer the *Miranda* warnings. Because they were under no obligation to do so, it follows that they were under no obligation to obtain a waiver of those rights from her. Therefore[,] it is immaterial whether her waiver of her constitutional rights was knowing, intelligent or voluntary[.]"). *See also United States v. Garcia-Garcia*, No. 2:21-CR-29, 2021 WL 1550075, at *5 (S.D. Tex. Apr. 19, 2021) ("[T]he interview was noncustodial as that term has been defined by the courts for *Miranda* purposes. Therefore, [the officer] was not required to obtain [the defendant's] waiver of *Miranda* rights[.]"); *State v. Judecki*, No. CR-03-533, 2004 WL 1433628, at *5 (Me. Super. Apr. 22, 2004) (because interrogations were noncustodial, "*Miranda* warnings and waivers were not required").

Based upon the foregoing analysis, we conclude that there was no custodial interrogation of Mr. Campbell, and, therefore, Officer Baker was not required to advise Mr. Campbell of his *Miranda* rights. As such, the circuit court did not abuse its discretion by denying Mr. Campbell's motion to suppress and allowing the interview to be played for the jury.

18

**2.  Whether Mr. Campbell's Due Process rights were violated because his non-custodial confession was not voluntary.**  As noted above and explained in footnote 15, this issue was not raised below.[17]  "'[T]his Court's general rule is that nonjurisdictional questions not raised at the circuit court level will not be considered [for] the first time on appeal.'  *State v. Jessie*, 225 W. Va. 21, 27, 689 S.E.2d 21, 27 (2009) (citation omitted)."  *State v. Akers*, No. 20-0926, 2021 WL 3833272, at *2 (W. Va. Aug. 27, 2021) (memorandum decision).  *See also State v. DeGraw*, 196 W. Va. 261, 272, 470 S.E.2d 215, 226 (1996) (declining to address whether trial court improperly admitted evidence that allegedly violated Rule of Evidence 404(b) where the evidence was only objected to at trial on the ground that it violated Rule of Evidence 609, and commenting that "West Virginia Rule of Evidence 103(a)(1) provides, in pertinent part, that '[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . [i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the *specific* ground of objection, if the specific ground was not apparent from the context . . . .' *Id*. (emphasis added).").

Moreover, in making his argument as to the voluntariness of his confession, Mr. Campbell argues that he lacked the mental competency to voluntarily confess, and he

---

[17] In his reply brief, Mr. Campbell contends that trial counsel did object to the admission of his recorded interview on the basis that it was not voluntary.  However, the references to the record he provides do not reflect any such objection.

19

supports this argument with a psychological report that was prepared on August 13, 2013, after his trial had concluded.[18] However, no argument regarding Mr. Campbell's mental competency was asserted during the suppression hearing, and the psychological evaluation had not yet occurred. In determining whether the circuit court erred in declining to suppress Mr. Campbell's recorded interview, we are constrained to consider only arguments and evidence that were before the circuit court at that time. "'[W]here a person of less than normal intelligence does not have the capacity to understand the meaning and effect of his confession, *and such lack of capacity is shown by evidence at the suppression hearing*, it is error for the trial judge not to suppress the confession.'" *State v. Parsons*, 181 W. Va. 131, 134, 381 S.E.2d 246, 249 (1989) (emphasis added) (quoting *State v. Adkins*, 170 W. Va. 46, 54, 289 S.E.2d 720, 727 (1982)). *See also Fassett v. Delta Kappa Epsilon (New York)*, 807 F.2d 1150, 1165 (3d Cir. 1986) ("The . . . proper function of a court of appeals is to review the decision below on the basis of the record that was before the [lower] court." (footnote omitted)). Accordingly, because the voluntariness of Mr. Campbell's interview was not addressed by the circuit court in the first instance, we decline to address it on appeal.

---

[18] Prior to Mr. Campbell's sentencing, trial counsel filed a "Motion for Mental Status Evaluation." By order entered on June 24, 2013, the circuit court granted the motion "to determine if the Defendant is competent and to determine the Defendant's criminal responsibility at the time of the alleged offense."

### B. Jury Instructions

Mr. Campbell argues that the circuit court erred in failing to give two jury instructions requested by the defense on the voluntariness of Mr. Campbell's November 29, 2011 confession, and whether he made a knowing and voluntary waiver of his *Miranda* rights. The State contends that the jury was properly instructed. After setting forth the relevant facts and our standard of review for this issue, we will address its merits.

During the trial, the judge instructed the jury as follows before Mr. Campbell's recorded interview was played:

> Ladies and gentleman of the jury, we conducted a hearing prior to this trial regarding this interview process, and as a consequence of that, I have ruled that you may observe and see this, and that ruling only relates to its admissibility during this trial.
>
> You may consider what is contained in this statement only if you conclude or believe by a preponderance of the evidence, which is a preponderance of the evidence as opposed to proof beyond a reasonable doubt. Preponderance means more likely so than not. So, in other words, 50.0001 percent in favor as opposed to 49.999 percent against, that you must find by a preponderance of the evidence that such statement was freely and voluntarily made without threat or coercion or promise of reward.
>
> Then, if you do not believe the State has met its burden of proof, it is your duty to disregard such statement entirely.
>
> So[,] in determining that, you may consider the circumstances under which it was made, the defendant's frame of mind and any and all other circumstances.

21

You may attach whatever weight to the statement you deem advisable based upon these considerations of all the circumstances.

So[,] I tell you that just as a rule, if you will, in determining how you consider this statement.

In addition, during the jury charge, the circuit court instructed that:

[U]nder the law of this State, the "confession" or "statement" offered into evidence by the State may be considered by the jury in determining the guilt or innocence of the defendant of the crime charged in this case, only if the jury believes that the state has proven by a preponderance of the evidence that such statement was freely and voluntarily made without threat or coercion or a promise of reward, and that if you do not believe that the State has met this burden of proof, it is your duty to disregard such statement entirely.

Mr. Campbell argues that the circuit court erred in refusing two instructions he offered. The first, Defendant's Proposed Jury Instruction Number 1, provided:

You are instructed that, [sic] the burden is upon the State to prove by a preponderance of the evidence that any statements made by the Defendant were made voluntarily, and pursuant to the knowing and intelligent waiver of his [F]ifth [A]mendment right against self incrimination. If you find that the State has failed to meet this burden you must not consider the statement in your deliberations. *State v. Bradshaw*, 193 W. Va. 519, 457 S.E. 2d 456 (1995).

The second instruction, Defendant's Proposed Jury Instruction Number 3, would have advised the jury as follows:

You are instructed that there is a legal presumption against the waiver of ones [sic] right against self incrimination as set forth in *Miranda v. Arizona*, [sic] to overcome this the State must prove by at least a preponderance of the evidence

22

that the Defendant, John Campbell, made a knowing and voluntary waiver of his rights pursuant to *Miranda v. Arizona* to remain silent and not make a statement to Deputy Baker in this case. If you find that he did not so waive his rights, you must not consider any part of any statements made by him during your deliberations. *Brewer v. William*[*s*], 430 U.S. 387 (1977), *U.S. v. Grant*, [549] F.2d 942 (4th Cir.), cert denied, 432 U.S. 908 (1977).

The circuit court declined to give both instructions on the ground that it had already determined that there was no custodial interrogation, and, therefore, *Miranda* rights did not attach, and Mr. Campbell's waiver of his right against self-incrimination was not required. To the extent that Instruction Number 1 commented on the State's burden to prove that Mr. Campbell's confession had been voluntary, the circuit court found that instruction was already covered in the jury charge.

Our standard of review for this assignment of error is two-part: "As a general rule, the refusal to give a requested jury instruction is reviewed for an abuse of discretion. By contrast, the question of whether a jury was properly instructed is a question of law, and the review is *de novo*." Syl. pt. 1, *State v. Hinkle*, 200 W. Va. 280, 489 S.E.2d 257 (1996). We consider the instructions as a whole to determine their sufficiency.

In general, the question on review of the sufficiency of jury instructions is whether the instructions as a whole were sufficient to inform the jury correctly of the particular law and the theory of defense. We ask whether: (1) the instructions adequately stated the law and provided the jury with an ample understanding of the law, (2) the instructions as a whole fairly and adequately treated the evidentiary issues and defenses

23

raised by the parties, (3) the instructions were a correct statement of the law regarding the elements of the offense, and (4) the instructions meaningfully conveyed to the jury the correct burdens of proof.

*State v. Miller*, 197 W. Va. 588, 607, 476 S.E.2d 535, 554 (1996).

Mr. Campbell correctly observes that West Virginia follows the Massachusetts rule with regard to the voluntariness of statements: "We adopt the 'Massachusetts' or 'humane' rule whereby the jury can consider the voluntariness of the confession, and we approve of an instruction telling the jury to disregard the confession unless it finds that the State has proved by a preponderance of the evidence it was made voluntarily." Syl. pt. 4, *State v. Vance*, 162 W. Va. 467, 250 S.E.2d 146 (1978).

We find the jury was properly instructed regarding the State's burden to establish, by a preponderance of the evidence, that Mr. Campbell's confession was voluntary; thus, the portion of Defendant's Proposed Jury Instruction Number 1 that repeated the State's burden was properly rejected by the trial court as repetitive. A defendant "is not entitled to repetitive or redundant instructions . . . ." *State v. Putnam*, 157 W. Va. 899, 903, 205 S.E.2d 815, 818 (1974). In other words, "It is not reversible error to refuse to give instructions offered by a party that are adequately covered by other instructions given by the court." Syl. pt. 20, *State v. Hamric*, 151 W. Va. 1, 151 S.E.2d 252 (1966).

24

Likewise, Mr. Campbell was not entitled to have the jury instructed to determine whether he had knowingly and intelligently waived his Fifth Amendment right to remain silent, which was addressed in both of his proposed instructions. The circuit court had already determined that Mr. Campbell's Fifth Amendment rights, as set out in *Miranda v. Arizona*, had not attached insofar as he had not been subjected to a custodial interrogation. We have affirmed this ruling. Because Mr. Campbell's rights never attached, he was not required to waive them,[19] and the proposed instructions stating the contrary were erroneous. "It has been consistently held in criminal cases that instructions which are confusing, misleading[,] or which incorrectly state the law should not be given. *State v. Bolling*, W. Va., 246 S.E.2d 631 (1978); *Wilson v. Edwards*, 138 W. Va. 613, 77 S.E.2d 164 (1953)." *State v. Butcher*, 165 W. Va. 522, 528, 270 S.E.2d 156, 160 (1980). For these reasons, we find the circuit court did not err in refusing Defendant's Proposed Jury Instructions Number 1 and Number 3.

---

[19] *See, e.g.*, *United States v. Garcia-Garcia*, No. 2:21-CR-29, 2021 WL 1550075, at *5 (S.D. Tex. Apr. 19, 2021) ("[T]he interview was noncustodial as that term has been defined by the courts for *Miranda* purposes. Therefore, [the officer] was not required to obtain [the defendant's] waiver of *Miranda* rights[.]"); *Commonwealth v. Walton*, No. CP46CR000046592015, 2016 WL 3014810, at *5 (Pa. Ct. Com. Pl. Jan. 22, 2016) (explaining that where "the police were not obligated to administer the *Miranda* warnings, . . . it follows that they were under no obligation to obtain a waiver of those rights . . . Therefore[,] it is immaterial whether [a defendant's] waiver of her constitutional rights was knowing, intelligent or voluntary[.]"); *State v. Judecki*, No. CR-03-533, 2004 WL 1433628, at *5 (Me. Super. Apr. 22, 2004) (because interrogations were noncustodial, "*Miranda* warnings and waivers were not required.").

## C. Ineffective Assistance of Counsel

Mr. Campbell asserts that his trial counsel's failure to explore his mental state prior to the sentencing stage of his criminal proceeding was ineffective assistance of counsel, particularly where a defendant's mental state can or should be a factor considered as part of assessing the voluntariness of his confession under the totality of the circumstances. The State argues that this claim is not properly before this Court. We agree with the State.

This Court has explained that

> The very nature of an ineffective assistance of counsel claim demonstrates the inappropriateness of review on direct appeal. To the extent that a defendant relies on strategic and judgment calls of his or her trial counsel to prove an ineffective assistance claim, the defendant is at a decided disadvantage. Lacking an adequate record, an appellate court simply is unable to determine the egregiousness of many of the claimed deficiencies.

*State v. Miller*, 194 W. Va. 3, 15, 459 S.E.2d 114, 126 (1995). Furthermore,

> It is the extremely rare case when this Court will find ineffective assistance of counsel when such a charge is raised as an assignment of error on a direct appeal. The prudent defense counsel first develops the record regarding ineffective assistance of counsel in a habeas corpus proceeding before the lower court, and may then appeal if such relief is denied. This Court may then have a fully developed record on this issue upon which to more thoroughly review an ineffective assistance of counsel claim.

Syl. pt. 10, *State v. Triplett*, 187 W. Va. 760, 421 S.E.2d 511 (1992). Mr. Campbell himself

observes in his brief that the reason trial counsel failed to bring all relevant information to

the circuit court at the suppression hearing "is pure speculation." This Court has

commented that

> In a direct appeal . . . it is often difficult, if not impossible, for this Court to determine "whether the attorney's performance below was ineffective or merely the result of trial strategy." *State v. Bess*, 185 W. Va. 290, 293, 406 S.E.2d 721, 724 (1991). In past cases, this Court has cautioned that "[i]neffective assistance claims raised on direct appeal are presumptively subject to dismissal." *State v. Miller*, 197 W. Va. 588, 611, 476 S.E.2d 535, 558 (1996). S*ee City of Philippi v. Weaver*, 208 W. Va. 346, 351, 540 S.E.2d 563, 568 (2000). Such claims are more properly raised in a post-conviction collateral proceeding "to promote development of a factual record sufficient for effective review." *Miller*, 197 W. Va. at 611, 476 S.E.2d at 558.

*State v. Woodson*, 222 W. Va. 607, 621, 671 S.E.2d 438, 452 (2008) (per curiam). We

have further cautioned that

> Traditionally, ineffective assistance of counsel claims are not cognizable on direct appeal. We have urged counsel repeatedly to think of the consequences of raising this issue on direct appeal. Claims that an attorney was ineffective involve inquiries into motivation behind an attorney's trial strategies. *See State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995). Without such facts trial counsel's alleged lapses or errors will be presumed tactical moves, flawed only in hindsight. What is more, in the event a defendant pursues his claim on direct appeal and it is rejected, our decision will be binding on the circuit court through the law of the case doctrine, "leaving [defendant] with the unenviable task of convincing the [circuit court] judge that he should disregard our previous ruling." *U.S. v. South*, 28 F.3d 619, 629 (7th Cir. 1994). That is why in

27

*Miller* we suggested that a defendant who presents an ineffective assistance claim on direct appeal has little to gain and everything to lose.

*State ex rel. Daniel v. Legursky*, 195 W. Va. 314, 317 n.1, 465 S.E.2d 416, 419 n.1 (1995).

In his reply brief, Mr. Campbell notes that his trial counsel's law license has been annulled, *see Law. Disciplinary Bd. v. Morgan*, 243 W. Va. 627, 849 S.E.2d 627 (2020), but he does not allege that the annulment renders him unable to call former counsel as a witness in a habeas proceeding. Moreover, Mr. Campbell's argument goes on to pose various questions regarding counsel's actions that cannot be answered in this Court and, therefore, would result in the assumption that they were matters of strategy. Mr. Campbell also fails to analyze or even quote the relevant test for ineffective assistance of counsel. *See* Syl. pt. 5, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 ("In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.").[20] For

---

[20] Mr. Campbell also ostensibly fails to appreciate that

As we stressed in *Miller*, "[t]he test of ineffectiveness has little or nothing to do with what the *best* lawyers would have done. Nor is the test even what most good lawyers would have done." 194 W. Va. at 16, 459 S.E.2d at 127. Rather, the focus of any

these reasons, we find that Mr. Campbell's claim of ineffective assistance of counsel is not properly before this court in a direct appeal; accordingly, it will not be addressed.

## IV.

## CONCLUSION

For the reasons explained in the body of this opinion, we conclude that the circuit court did not err by refusing to suppress Mr. Campbell's recorded confession, or by refusing to give Mr. Campbell's two proposed jury instructions. Furthermore, Mr. Campbell's claim of ineffective assistance of counsel is not properly before this Court, and we decline to address the same. Accordingly, we affirm the circuit court's order dated January 24, 2020.

Affirmed.

---

habeas evidentiary hearing as it relates to ineffective assistance of counsel is affording a petitioner's trial counsel an opportunity to explain his actions during the underlying trial. *See id*. at 17, 459 S.E.2d at 128 (stating "we intelligently cannot determine the merits of . . . ineffective assistance claim[s] without an adequate record giving trial counsel the courtesy of being able to explain his trial actions.").

*Tex S. v. Pszczolkowski*, 236 W. Va. 245, 254, 778 S.E.2d 694, 703 (2015).